WETMORE and others *vs.* TRACY.

*Public nuisances* may be abated by the mere act of individuals.

The statute authorizing *commissioners of highways* to order the *removal of
fences* by the erection of which, highways have been *encroached upon*, does
not abrogate the common law remedy of *abatement of nuisance* by the
mere act of individuals, or abolish the proceeding by *indictment :* the reme-
dy given by the statute is cumulative.

The object of the statute seems to have been to provide a remedy in doubtful
or questionable cases.

ERROR from the Ontario common pleas.   Tracy sued Wet-
more and four others in a justice's court, in an action of *tres-
pass* for throwing down 100 rods of his fence, whereby cattle
were let into his premises, and his wheat was destroyed.   The
defendants pleaded, 1. *non cul.*, and 2. that the fence was a

*public nuisance,* obstructing a public highway, and that the defendants removed it as a public nuisance, doing no unnecessary damage. The justice rendered judgment in favor of the plaintiff, for $50 damages. The defendants appealed to the Ontario common pleas. On the trial in that court the plaintiff proved his declaration. On the part of the defendants it was proved that the fence torn down was built in or near the centre of a road three rods wide, for the distance of 35 rods, for two thirds of which distance it was in the centre of the beaten track, and at one place was so much on the beaten track that wagons could not pass along ; and it was difficult even to pass on horseback. The plaintiff claimed that the road had not been legally laid out, but produced no evidence in support of his allegation. The court charged the jury that the evidence produced by the defendants was not sufficient to bar the plaintiff's action ; that the fence was not a *public nuisance,* but a mere *encroachment,* to remove which the defendants ought to have availed themselves of the remedy pointed out by the revised statutes, by application to the commissioners of highways ; that if the fence was a nuisance, the defendants had no right to abate it by their own act ; that the trespass had been fully established, and that the defendants had wholly failed in their justification. To which charge the defendants excepted. The jury found a verdict for the plaintiff, with $50 damages, on which judgment was entered. The defendants sued out a writ of error.

*G. W. Clinton,* for the plaintiffs in error. The fence in question was a public nuisance. Any thing that impairs or impedes the exercise of the public right to travel upon a public highway is a nuisance. 1 *Hawk. P. C. Book* 1, *ch.* 76, § 48, 49, 50. A partial obstruction of a highway is a nuisance, and any one may abate it. 6 *Munf.* 308. Any unlawful obstruction erected upon or across a public highway is a nuisance. 2 *Mass. R.* 143. The injury being common to all, any one has a right to abate a public nuisance. 1 *Hawk. P. C. Book* 1, *ch.* 75, § 12. *James* v. *Haywood, Cro. Car.* 184. *Rex et Regina* v. *Wilcox, Salk.* 458. *Galatine* v. *Gardner,* 7 *Johns. R.* 106. *Hart* v. *Mayor, &c. of Albany,* 9 *Wendell,* 572, *passim,*

*and the cases cited to first point.* Nor need the abater wait until he has suffered actual damage. *Penruddock's case,* 5 *Co.* 101. Nor need he aver or prove that he did as little damage as possible, in abating the nuisance. *Salk.* 458. *Cro. Eliz.* 269. 3 *Lev.* 92. Nor can the defendant allege that he left enough of the highway for the public use. 9 *Wendell,* 584. He has no right exclusively to occupy any portion of it. *Id.* The court erred in charging that the fence was merely an encroachment under the statute, and not a nuisance. The statute referred to, 1 *R. S.* 521, could never have been intended to apply to a case like this. To encroach signifies to take by degrees—little by little ; and an encroachment is the taking of a small portion, not of a half, or any other considerable part. The statute was intended to apply to cases of accidental, involuntary *encroachment,* in the strict sense of the word, as is evident from the mildness of its provisions. By section 109, no person can be required to remove the encroaching fence, except between the first day of April and the first day of November. If wilfully taking exclusive possession of one half of a highway be merely an encroachment, where is it to stop? Why may not two thirds be taken? Why not all but just enough to allow the passage of the ordinary vehicles of the country ? If one may do it, why not his opposite neighbor ? If this be the construction of the statute, our roads may be reduced to a very narrow limit for five months in the year, and more ; for a sixty days notice is the first step—then an inquisition of a jury—after which, if the fence be found an encroachment, the owner has sixty days to remove it. Whether an encroachment or a nuisance (if there be a distinction) was a question for the jury, and should have been left to them.

The court also erred in charging that the defendants, to remove it, should have pursued the course pointed out by the statute. If an encroachment under the statute, it might still have been a nuisance at common law. It might have come within Hawkins' definition of a nuisance. It might have been a positive obstruction. It should have been submitted to the jury to say whether it was a nuisance or not. If a nuisance, any one had a right at common law to abate it, and the statute relative to obstructions and encroachments on highways cannot take

away this right. It would be singular, indeed, if a gate were erected across, or some impediment placed in a public highway, if the public should be forced to acquiesce, and be prohibiting from removing the obstruction ; and driven, as their only remedy, to urge the commissioners of highways to action, and await the result of a tedious special proceeding. This would be the only course, for if the common law right of abating be taken away by the statute, the common law proceeding by indictment must also be tolled; and as the statute concerns *obstructions* as well as encroachments, a road might be actually closed up, and the public driven to the slow and inadequate statute remedy for redress. But a common law right can never be taken away or impaired by a statute, unless the statute be express in its terms, or the tolling by implication be unavoidable. Such a statute is to be construed strictly. 4 *Bac. Abr.* 660. 10 *Mod.* 282. The law does not favor a repeal of a statute by implication, (much less a repeal of common law,) repugnance should be clear to have that effect. 11 *Co.* 63. 4 *Bac.* 638, 9. 10 *Mod.* 118. 1 *Roll. R.* 88. Affirmative statutes do not abrogate the common law. 4 *Bac.* 641. *Co. Litt.* 111, 115. 2 *Inst.* 200. This statute remedy is *cumulative.* 2 *Burr.* 799, 803, 805, 834. 2 *Hawk.* 302, *and n.* *Leach*, 235. *Cowp.* 648. *Salk.* 45. 4 *T. R.* 202. *Moore*, 750. 2 *Black. R.* 900.

The charge of the court left nothing for the jury. It disposed of all the questions of fact in the case. " The fence was not, and no part of it was a public nuisance. The trespass is fully made out, and the defendants failed in their justification." Nothing was submitted to the only proper triors of fact ; but they left the jury box with a direction to find for the plaintiff.

*J. Willson*, for the defendant in error, commented upon the cases cited by the counsel on the other side, and insisted that they did not justify the defendants in abating, by their own act, what they alleged to be a nuisance ; but if at *common law* they had such right, he contended that the law had been altered or modified by *statute.* By the revised statutes, 1 R. S. 521, § 103, it is enacted that, in every case where a high-

way is encroached upon by fences, the commissioners of highways of the town shall, if in their opinion it be deemed necessary, order such fences to be removed. Their order must be reduced to writing, notice must be given to the occupant to remove the fences within 60 days, and if he denies the encroachment, he is entitled to have a jury pass upon the question ; and even then, after the jury shall find against him, he is entitled to 60 days within which to remove the fences ; nor can he be required to remove them, except between the first day of April and the 1st day of November in any year. § 104 *to* 109. These provisions, he insisted, modified the common law on this subject, and that therefore such a construction should be given to the statute as not to render it superfluous or nugatory. The statute, he urged, does not define how far an encroachment may be carried without assuming the character of a nuisance ; but from its provisions the inference is irresistible that nuisance and encroachment are not to be deemed convertible terms. If regarded as synonymous, the statute is virtually superseded in important particulars. Commissioners of highways, whose duty it is to oversee the roads, and whose powers are specifically defined by statute, may, as individuals, do that with impunity which in their official characters they could not do without subjecting themselves to a prosecution as trespassers.

*By the Court*, NELSON, J. The only question in the case is, whether the common law remedy for an encroachment upon a public highway has been taken away by the statute, 1 *R. S.* 521. That act provides, that in case of an encroachment by fences erected by any occupant of land through which a highway runs, the commissioners of highways shall, if deemed necessary, order such fences to be removed. Notice in writing is required to be given to the occupant to remove them within sixty days, and if not done within that time, a forfeiture of fifty cents for each day thereafter accrues. The occupant may, if he pleases, deny the encroachment, and then a jury is summoned to try the issue. The 109th section, however, provides that no person shall be required to remove a fence under the preceding provisions of this article,

except between the first day of April and the first day of
November.

It is very clear, if the summary remedy at common low
is taken away by these provisions, a serious interruption of
the use of a public highway may exist for *seven months* in
the year between the times above specified ; and for the re-
maining five months no remedy at all is to be found.  If the
abatement of the nuisance is abolished, so is the remedy by
indictment ; for the argument drawn from the statute is as
conclusive in the one case as the other.  Where a statute
creates a new offence, by making unlawful what was before
lawful, and prescribes a particular penalty and mode of en-
forcing it, the statute of course must be followed ; but if the
offence was before punishable at common law, though the
statute may prescribe a new remedy, unless there are nega-
tive words excluding all others, the common law remedy
still remains.  2 *Burr.* 803, 805, 838. 2 *Hawk.* 301, 2.  7
*Wend.* 280. 5 *Cowen*, 168. 2 *Caines*, 169. That affirmative
statutes do not take away the common law, is a maxim of
the law itself.  2 *Inst.* 200.  6 *Bac. tit. Statute, G.*  Upon
these principles, I am satisfied the remedy given by statute
is cumulative.  There is nothing to be found in it, expressly
or impliedly, excluding already existing remedies which
were well known to the legislature.

The summary abatement of a nuisance by an individual
or individuals is always under the peril of having the ac-
tors deemed trespassers, unless the existence of a nuisance
is established.  In the particular case provided for, this
might often be a nice and difficult question, and the public
convenience might seriously suffer before any one would
consent to assume the responsibility.  A speedy mode of
ascertaining the fact by legal proceedings was therefore
wise and useful to all parties, as it provided the means by
which the question could be determined without the ha-
zard incident to an abatement.  But cases of palpable en-
croachment upon the highway, to the serious interruption
of the use of the common right, might arise, of such ur-
gent necessity as not to admit of delay, and hence the ex-
isting remedies were not abrogated.  Either may be resort-
ed to.  No distinction was intended to be made by the stat-

ute between *great* and trifling encroachments. This would have been impracticable and visionary. We may also add, that the statute makes no provision for removing the encroachment beyond the penalty ; and of consequence, if no other remedy existed, it would remain during the pleasure of the offending party, whatever might be its injury to the public.

The 38th section of 13 *Geo.* 3, *ch.* 78, vests in the surveyors of highways substantially the power conferred on the commissioners here, in respect to encroachments, 1 *Hawk.* 395 ; 2 *Burns' J. title Highways*, 506 ; and yet they are pronounced public nuisances at common law, and abateable as such by any one. 2 *Burns' J.* 503. 2 *Hawk.* 408, § 61, 2. And the latter author states that the provisions in 13 *Geo.* 3 were passed, because it was thought the common law had not sufficiently provided against the mischief. The 102d section, 1 *R. S.* 521, imposes a penalty of $5 for every obstruction of a highway. Now the argument is just as forcible that this provision has abrogated the common law, as that urged upon us in respect to encroachments. By the common law, both were offences and abateable, and no negative words are used in either provision of the statute.

That any citizen has a right to abate a nuisance of this kind was a question considerably discussed in the case of *Hart* v. *Mayor of Albany,* 9 *Wendell*, 589, 607, 8, and no doubt was entertained upon it. The authorities referred to by Mr. Justice Sutherland and Senator Edmonds appear to be uniform.

I am therefore of opinion that the court below erred, and that their judgment ought to be reversed, and that a *venire de novo issue.*

Judgment accordingly.