THE STATE *v.* MOFFETT, *et al.*

The statute, making it a penal offense to injure a milldam, does not take away the common law right to abate a nuisance.

An act of the legislature, authorizing B to build a dam, does not take away the right of M to abate it as a nuisance, if it caused the water to flow back upon M, to his serious disadvantage.

In abating a nuisance, no more injury must be done to the property than is absolutely necessary to effect the object.

To come within the prohibition of the statute, the injury to a dam must have been wilful and malicious. The necessary abatement of a nuisance by one's own act would not disclose such motives.

The penal statute, relative to injuries to mill-dams, being merely cumulative, it can have no abrogating influence upon the common law.

ERROR, *to Lee District Court.*

David Rorer, for the state, in his argument, cited Rev. Stat. p. 187, § 15; 14 John. 272; 15 ib. 213; 5 Wend. 423; 7 Cowen, 266; 3 Caine, 307.

C. Mason and J. C. Hall, for the defendant, referred to 3 Hill, 261; 10 Mass. 391; 14 Wend. 250.

Opinion by KINNEY, J.   The defendants were indicted for damaging a milldam.

It appears, from the bill of exceptions, that Moffett built and possessed a mill and dam on Skunk River in 1834 or 1835; that at the time of the alleged injury he was in possession; that in 1840, Peter Brener built a mill and dam on the same river, about a mile and a half below Moffett's mill, the effect of which was to throw back-water to an injurious extent on the wheels of Moffett's mills, but not so as to stop them entirely; that both mills are public mills; and on the 23d of March, 1848, Moffett and the other defendants tore down Brener's dam to a considerable degree—a space from fifty to eighty feet wide, and from one to three feet deep—with intent to remove the alleged nuisance; and justified in their defense on the ground that Brener's dam was a nuisance injurious to Moffett, and that he had a right to abate it by his own act.   The prosecution asked the court to instruct the jury, that, by the 15th section of the criminal law of Iowa, "Entitled an Act defining Crimes and Punishments," the right of Moffett to abate a milldam as a nuisance, by his own act, was taken away; which instruction was refused.   The court also refused to instruct the jury, that the act of the legislative assembly authorizing Peter Brener to build a dam did not take away Moffett's right to abate the dam as a nuisance.   The court then instructed the jury, that if Brener's dam caused water to flow back upon the wheel of Moffett's mill to his serious injury, it was a private nuisance, and Moffett might pull it down so as to remove the back-water.

The State *v.* Moffett.

These instructions, refused and given, are assigned for error.

The only question in this case is, whether the statute making it a penal offense to "injure a mill-dam," took away Moffett's right to abate it for a nuisance. That a person at common law has a right to abate a nuisance cannot be denied. It is one of those rights which secure to him the uninterrupted enjoyment of his person and property. When properly exercised, it may be as essential to his happiness as the right of self-defense. But like other summary rights of this nature, it is confined within certain limits. No more injury to the property of another must be inflicted than is absolutely necessary to accomplish the object. A salutary check is thrown around an improper exercise of this right, as the individual is always under the peril of being deemed a trespasser, unless the existence of the nuisance is established. Thus, while a person can be the judge, in the first instance, as to the existence of the nuisance, if it should turn out otherwise he is responsible, and can be made to answer to the party injured, and may subject himself to a criminal prosecution. But at common law, his right to abate a nuisance, when it really is such, is uncontroverted. And we think our statute has not impaired this right by making it penal to injure a mill-dam, if the mill-dam becomes a nuisance. The injury to the dam, to come within the purview of the statute, must be "wilful or malicious." The summary abatement of a dam as a nuisance, is not necessarily attended with malicious or wilful motives. It may be an act necessary for the protection and enjoyment of property.

But it is said by counsel, that as the statute is penal, it is prohibitory and general in its application to all the citizens ; prohibiting as well those from injuring a mill-dam, to whom it is a nuisance, as others who are not injured by it. We do not think this position at all sound, or the conclusion drawn from a penal statute a legal case. The statute in relation to assault and battery is penal, and of universal application, and prohibitory in its nature and effects ; and yet it does not interfere with any of those rights which any man has of defending his person against the attacks of others.

If in this case Brener became the aggressor by creating a nuisance, he was the injuring party, and as such the nuisance was liable to be abated.

" That affirmative statutes do not take away the common law," is a maxim of the law itself.

There is nothing in our statute, express or implied, excluding remedies which existed before the statute was passed. One of these remedies was abatement of a nuisance ; and in the absence of a statute taking this remedy away, it remained preserved.

Nor does the imposition of a penalty, by the statute, take away the right of abatement. Nothing is better settled, as a general rule, than that the addition of a penalty, by statute, for a common law offense, is merely cumulative ; and that, without negative words, such statutes detract nothing from the remedies formerly allowed by law. *Renwick* v. *Morris*, 3 Hill, 621 ; *Wetmore* v. *Tracy*, 14 Wend. 250 ; *Commonwealth* v. *Ruggles*, 10 Mass. 399. If this is the law, and we think the books are conclusive upon the subject, then the statute did not take away Moffett's right to abate the dam as a nuisance, and the instructions of the court were correctly given and refused.

The question of title does not appear to have been raised by the evidence set out in the bill of exceptions. The exceptions state that it was in evidence, that Moffett built and possessed the mill and dam ; but as the exceptions do not state that Moffett did not introduce testimony tending to prove a fee-simple title, we cannot presume that such was not the case.

                              Judgment affirmed.