1    462
97    182

## GUNTER *et al. vs.* GEARY *et al.*

If a party desires to bring the rulings of the district judge, during the progress of a trial under review, he must either make out a statement of facts, pursuant to sec. 272 of the Practice Act of 1850, or a bill of exceptions, pursuant to sections 287 and 288. This court will not examine into the correctness of the decisions of a district judge, where it has been left to the clerk of the district court to ascertain and settle what such decisions were.

A lot of land in the harbor of San Francisco, lying within the line of streets as laid down and recognized by the city on its official map, and being in the actual possession of a person who claims to be the owner, cannot be taken from him and appropriated to the public use, without paying him a just compensation. *Per* BENNETT, J.

A common nuisance being deemed an injury to the whole community, *every person* in the community is supposed to be aggrieved by it, and has the right to abate it, without regard to the question whether it is an immediate obstruction or injury to him. *Per* BENNETT, J.

All that part of a bay or river below low water or low tide, is a public highway, common to all citizens, and if any person appropriates it to himself exclusively, the *presumption* is, that it is a detriment to the public. *Per* HASTINGS, Ch. J.

---

(*a*) Mr. Justice LYONS was not present at the argument of this case.

Gunter *v.* Geary.

The proprietor of a wharf may insist on compensation for the use made of his wharf above the line of low water, but no compensation can be claimed for that part of the wharf below the line of low water. *Per* HASTINGS, Ch. J.

The absolute right of a state to control, regulate, and improve the navigable waters within its jurisdiction, is an attribute of sovereignty, which cannot be disputed, and this right may be delegated to individuals either in a natural or corporate capacity. *Per* HASTINGS, Ch. J.

APPEAL from the superior court of the city of San Francisco. The facts of the case are fully stated in the subjoined opinions.

*Jeremiah Clarke*, for the plaintiffs.

*John W. Dwinelle*, for the defendants.

*By the Court*, BENNETT, J. The plaintiffs, claiming to be the owners of a certain lot, in San Francisco, over which the tide ebbed and flowed, had driven piles over a portion of it, upon which they had built a small house. The defendants, supposing that the lot in question had been appropriated as a public slip, and that the piles and house were an obstruction to the free use thereof by the public, went on the lot and by force turned the plaintiffs out of possession and tore down their house. The action was brought to recover damages for such trespass.

On the 24th day of July, 1850, the city of San Francisco filed a bill in the superior court of the city of San Francisco, to enjoin the plaintiffs in this suit from driving piles and building on the lot in question. An injunction was issued by the court, and the work of the plaintiffs was stopped. The injunction was dissolved by the court on the 31st day of July, and that suit was discontinued. The plaintiffs then proceeded with their improvements. On the 7th day of August, the common council of San Francisco passed an ordinance, appropriating the lot to the purposes of a public slip. The plaintiffs disregarding this ordinance, under the supposition that the common council had no authority to pass it, erected the house on the piles which they had driven, and where the water, at low tide, was from two to two and a half feet deep. The defendant Geary, who was mayor of the city, and the defendant Fallon, who was marshal, assisted

by a number of other persons acting under their directions, after having removed the furniture from the house, pitched the house into the bay. These are, in substance, the facts deducible from the evidence given at the trial. The jury found a verdict against Geary, the mayor, in the sum of two thousand dollars, and acquitted all the other defendants. From the judgment rendered on such verdict the defendant Geary appeals.

The appellant contends that there was error; 1st, in the ruling of the court in admitting certain evidence; and 2d, in the charge of the court to the jury.

The first point we cannot consider. The rulings of the court upon questions of evidence during the progress of the trial, are not brought before us in such a shape that we can review them. Section 271 of the Practice Act of 1850 provides that, " On the " trial of the cause in the court below, any party may require " the clerk to take down the *testimony* in writing; when so " taken down, it shall serve as a statement of facts, unless the " parties afterwards agree to one." Under section 272, a statement of facts proved on the trial, or of the testimony given, may be prepared and settled by the parties in the manner therein prescribed; and under sections 287 and 288, the parties may make out and settle a bill of exceptions to the decisions of the court upon any point of law arising in the cause, and present it to the judge, who, after correcting it, if erroneous, shall sign the same, and direct the clerk to file it among the records of the suit.

In this case, there was no statement of facts, or of the testimony, or of the decisions of the court, prepared pursuant to the requirements of either section 272 or sections 287 and 288. All we have before us, is the testimony taken down by the clerk; but the clerk is not authorised to say what decisions the court did or did not make, and his statement in respect to such decisions, is entirely uncalled for by the statute, and cannot be regarded. If parties wish to bring the rulings of the court during the progress of a trial, under review, they must take some other course than leaving it to the clerk to ascertain and settle what such rulings were. This is in accordance with the statute, and

Gunter *v.* Geary.

will establish a more reasonable system of practice, than could be attained by the course adopted by the defendants. We are the more ready to adopt this practice and settle the rule now, because it can work no injustice to the defendants, inasmuch as we are of the opinion that the decisions of the court excepted to, were correct upon all points which could have had any influence upon the verdict of the jury.

The second point arises upon the charge of the court to the jury. It is unnecessary to say, whether the common council had the power to dedicate a portion of the bay lying within the line of streets, as they are laid down and recognized by the city on its official map, as a public slip, provided there were no prior claims to the land, and no interference with possessory rights. The question presented in this case is, whether they had the power to take a lot, in the actual possession of another, who claimed to be the owner, and appropriate it to the use of the public, without paying any compensation, and without any title to the land in the city.

The plaintiffs had, before the passage of the ordinance of August 7th, taken possession of that portion of land, on which they afterwards built their house, by driving piles; the usual, if not the only way by which possession is acquired of land in that portion of the city. They had no title, it is true—neither had the city; but the plaintiffs, having the *actual possession*, could not be deprived of it by the officers of the city. I hold the ordinance of August 7th to be of no effect, so far as the parcel of land on which the plaintiffs' house stood is concerned, and, consequently, that the defendants had no authority for their forcible proceedings in removing it.

The argument of counsel, deducing the power of the common council to lay out public slips, from their authority, under the city charter, to erect, repair, and regulate public wharves and docks, has already been answered by the views above expressed. They cannot take property, in the possession of another, for that purpose, without paying an adequate compensation, where the title is not in the city. The common council, it is true, have power to *regulate* the erection and repair of

*private* wharves, but that is a different thing from *prohibiting* the erection of them by individuals upon their own lands.

Was the act of the defendant an obstruction to navigation? Upon this point the evidence is somewhat conflicting. The question was fairly submitted by the court to the jury, and if there were no objections to other portions of the charge, I should not feel authorized to disturb the judgment.

The court charged the jury, that the right to remove an obstruction to a highway belongs to those only who actually have occasion to use the highway or who are aggrieved by the obstruction. This presents the question, whether any citizen in the community has the right to abate a common nuisance, or whether that right is limited to those in whose way the nuisance may be, at the very time when they set about removing it.

It is stated, in general terms, in all the authorities, that any one has a right to abate a common nuisance. The very point was decided in *Wetmore* v. *Tracy*, (14 *Wend.* 250;) and, in *Hart* v. *Mayor, &c. of Albany*, (9 *Wend.* 571,) though not decided, was fully discussed by Justice Sutherland and Senator Edmonds, who both came to the conclusion that a public nuisance may be abated by any person in the community, (*id.* 589, 608,) without regard to the question whether it is an immediate obstruction or injury to him. And that conclusion seems the most legitimately deducible from the principles upon which the law respecting public and private nuisances proceeds. A nuisance is denominated private, because it injures only a particular individual or class of individuals, and can, therefore, be abated only by him who suffers from it. But a nuisance is common, because it is an injury to the whole community. Every person in the community is aggrieved, and consequently every person has the right to abate the nuisance.

The inference might be drawn from the precedent of a plea cited by the counsel for the plaintiffs, (2 *Chitty Pl.* 571, 572, *Ed.* 1812,) that his position was correct; but the point was ruled the other way in *James* v. *Hayward*, (*Cro. Ch.*) and in *Houghton* v. *Butler and another*, (4 *T. R.* 364.) The first case was an action of trespass for breaking the plaintiff's close, and

pulling up and cutting down a gate. The defendant justified, because the gate was placed across the highway, and so fixed that the *king's subjects* could not pass without interruption by reason of the gate, and therefore he cut it down. The justification was sustained; the court holding it was a common nuisance, for the abating of which no action would lie. The language of the court is, " that admitting it to be a nuisance, although the " usual course is to redress it by indictment, yet every person " may remove the nuisance, and the cutting of the gate was " therefore lawful." There was no averment in that case that the defendant was *specially* aggrieved. *Houghton* v. *Butler and another* seems to support the same doctrine. That was also trespass for breaking down a gate. The defendants justified on the ground of a right of way over the *locus in quo;* and because the gate was wrongfully erected across the way, they broke it down. There was no averment in that case that they were *specially* aggrieved by the gate. So, in the case of *Wetmore* v. *Tracy* above cited, which was an action of trespass for throwing down 100 rods of fence, the defendants pleaded that the fence was a public nuisance obstructing a public highway, and that the defendants removed it as a public nuisance, doing no unnecessary damage. In this case also there was no averment that they were *specially* aggrieved by the fence.

It follows from the above view of the law, that in the case at bar, if the erection of the plaintiffs was a public nuisance, the defendants were justified in removing it. The charge of the court upon this point may therefore have misled the jury. Two questions were submitted to the jury, 1st, Was the building of the plaintiffs a common nuisance? and 2d, Conceding it to be so, had the defendants a right to abate it? The jury might have been of the opinion that it was a nuisance; and yet have been under the impression from the charge, that the defendants, because they had not been *specially* aggrieved, had no right to remove it, and were liable in damages for removing it; whereas the reverse is the law.

It is clear to my mind that it was no nuisance; but that is a matter, not for the court, but for the jury, to decide.

Gunter *v.* Geary.

A point was made upon the ground of excessiveness of damages. I do not think them excessive. But a new trial must be granted on the ground of misdirection to the jury.

Ordered accordingly.

*By the Court,* HASTINGS, Ch. J. It is admitted that where the plaintiffs drove their piles and erected their house, the water, at low tide, was from two to two and a half feet deep; and still it is insisted that the plaintiffs had acquired rights by such improvements, and had the possession, and that the city authorities of San Francisco, and the public, could not interrupt them in that possession, and appropriate this portion of the bay to public uses without adequate compensation. It is well settled, that all that part of a bay or river below low water at low tide, is a public highway, common to all citizens, and if any person shall appropriate it to himself exclusively, the *presumption* is, that it is a detriment to the public; because it is a diminution of their privilege in the enjoyment of their common right, and the government, by its officer, may enter upon it, and eject him from possession. (*Angell on Tide Waters,* 208–9.) The plaintiffs had no right to the possession, and had no property in that part of the bay, and could have none, as against the rights of the public. As well might the plaintiffs take possession of one of the public streets, fence it in, erect a house thereon, and claim damages for an appropriation of private property to public uses, in case the authorities should remove his " improvements" as an obstruction.

The house of the plaintiffs, being erected in a highway, is to be presumed to be a public nuisance. There can be no doubt that it was a nuisance. It is true, the presumption might be rebutted by showing that so far from having created a detriment to the public, by the structure which he has placed in the highway, he has thereby in truth increased their accommodation, and not diminished it. Had the structure of the plaintiffs been a wharf, or pier, then it possibly might have been shown that their improvements were a benefit to the public; but it is

Gunter v. Geary.

impossible to conceive how a house, a private dwelling perhaps, in such a locality, can be otherwise viewed than as a detriment to the public. It is held, in the case of *Commonwealth* v. *Wright et al.*, a case which excited much public interest at the time, and reported in the *American Jurist*, and cited in *Angell on Tide Waters*, (206,) that a proprietor of a wharf may insist on compensation for the use made of his wharf within the line of low water, but no compensation can be claimed for that part of the wharf beyond the line of low water. The house of the plaintiffs could not well be appropriated to any public use, and, if it could, they would have no right to insist upon compensation.

The absolute right of a state to control, regulate, and improve the navigable waters within its jurisdiction, as an attribute of sovereignty, cannot be in any manner disputed.

This right often is, both in England and in this country, delegated to individuals either in a natural or corporate capacity. The legislature of this state have conferred this power upon the municipal authorities of the city of San Francisco. It is their duty, then, as the guardians of the interests of commerce and navigation in the harbor of San Francisco, to abate all nuisances, having authority to permit such structures as shall tend to the benefit thereof. In the case at bar, these authorities had appropriated a portion of the harbor for a public slip, and the mayor and his assistants violated no private rights in removing all structures of any kind which they found obstructing the free use of such slip. I can see no possible benefit to result from a new trial, as it would appear to be the duty of the court to set aside a verdict as contrary to law, if found in favor of plaintiffs. The judgment should therefore be reversed; but, as there is a difference in the views entertained by the members of this court, and that this case may now be disposed of and not put over for a full bench, it is ordered that a new trial be awarded. (*a*)

(*a*) Mr. Justice LYONS was not present at the argument of this case.