Coe *v.* Schultz.

Coe *vs.* Schultz and others.

The act to create a metropolitan sanitary district, &c. (*Laws of* 1866, *pp.* 114, 1462,) does not authorize, and was not intended to authorize, the board of health, or any part or member of it, to redefine a nuisance or common nuisance, or to declare an act or thing to be a common nuisance which clearly is not and can not, under any circumstances, be such at common law.

Notwithstanding the attempt, by section 14 and other parts of the act, to give the board full power to remove, abate, suspend, alter, improve and purify any thing dangerous to life or health, as a public nuisance, the question whether the thing which has been or is to be removed, abated, &c. was or is

Coe *v.* Schultz.

dangerous to life or health, or was or is a public nuisance, is a jurisdictional question.

But independent of the special provision in the act to that effect, considering that the act not only gives power, but imposes a great public duty, on such a question all presumptions are and should be in favor of the board.

Though the execution of an order of the board of health, directing a certain species of manufacture to be suspended, may deprive an individual of his property, yet it can not be said that the individual would thereby be deprived of his property "without due process of law," within the prohibition of the constitution, if the business be a public *nuisance;* for the legislature had the power to give the board the right to do, and to make it their duty to do, the same thing which any citizen may do of his own motion, in respect to abating a public nuisance.

The act of 1866 is not unconstitutional as establishing an inferior local court, within the prohibition implied by article 6 of the constitution of the state.

Nor is the act unconstitutional on the ground that it authorizes the board of health to pass by-laws and ordinances. If the legislature had power to create the sanitary district and the sanitary board, it had the power also to give the board the right to pass by-laws and all proper ordinances to carry out the purpose of such creation.

MOTION to continue an injunction.

SUTHERLAND, J. The defendants, constituting the Metropolitan Board of Health, made an order that the manufacturing of superphosphate of lime, or poudrette, by the plaintiff, at Hunter's Point, within the metropolitan sanitary district, created by the act of February 26, 1866, be forthwith discontinued until the mode of conducting said manufacture should be so altered as that no odor or fumes could escape into the external air; and further ordered that such order be executed by the Metropolitan Board of Police; and a temporary injunction was granted restraining the execution of said order. The plaintiff, in his complaint, insists that the business or manufacturing process as carried on by him, was in no respect a nuisance. The defendants, in their answer, insist that said business, or manufacturing process, was a public nuisance, and not only disagreeable, but injurious to life and health. On the hearing of a motion before me to continue the injunction, many affidavits were read on the

part of the defendants, tending to show that the said business, or process of manufacturing, was, and had been for some time, a public nuisance; and not only disagreeable and annoying to many persons residing in the neighborhood, and to persons passing and repassing, but also injurious to public health; and many affidavits, on the part of the plaintiff, tending to show that the said business, or process of manufacturing, was not, had not been, and could not be, injurious to life or health. After hearing these affidavits, I at once said, that, considering them, and the presumptions in favor of the defendants as public officers, having a great public duty to perform, I should not feel justified in continuing the injunction on the ground that the thing or act ordered to be discontinued or altered, as a public nuisance, was not or could not be a public nuisance; but the counsel for the plaintiff, urging certain constitutional objections to the act under which the defendants had acted, and to their proceedings under it, as to the pertinency or materiality of which, in this particular case, I was not then prepared to judge — as to such constitutional objections, I not only heard the counsel at large, but permitted him to submit an elaborate written brief.

A careful consideration of the case, and of the common law and common law decisions as to nuisances, and of the counsel's brief, has led me to think that having substantially held at the hearing, that it appeared that the manufacturing business or process, as carried on by the plaintiff, was, and had been, a public nuisance and injurious to the public health, I ought at once to have vacated the temporary injunction, and denied the motion to continue it, without considering the constitutional questions; that is, irrespective of them; unless indeed, I assume, that the plaintiff's counsel in taking and urging the point that the execution of the order would deprive the plaintiff of his property "without due process of law," intended to go so far as to say that the state constitution had abolished the common law principle, that any subject or citizen has the right, of his own motion, summarily

to abate a public nuisance ; a constitutional construction so novel, and so utterly without any colorable support, that respect for the counsel and his brief forbids the assumption.

At common law a private nuisance was a tort ; a public or common nuisance a criminal offense. At common law a very concise definition of a public or common nuisance was, that it was a public annoyance ; but a more extended definition was, that it was an offense against the public, either by doing a thing which tends to the annoying the public, and common against all, or by neglecting to do any thing which the common good requires. (*See Jacob's Law Dic. and 2 Roll. Abr.* 83 ; *Hawk. Book* 1, *p.* 197, § 1.) It was a principle of the common law that any one might abate or remove a public nuisance, without staying to have the thing abated or removed, found to be a nuisance by a jury, or in, or by any preliminary legal proceeding. (*Hawk. same book, p.* 199, § 12. *James* v. *Hayward, Cro. Char.* 184. *Hart* v. *The Mayor, &c. of Albany,* 9 *Wend.* 571–589, 608, *and authorities there cited.* *Wetmore* v. *Tracy,* 14 *id.* 250.) Of course, any one who undertook, even in good faith, thus summarily to abate a public nuisance of his own motion, by his act showed that he regarded and declared the thing stated to be a nuisance, but he nevertheless took upon himself by his act the risk of being able to show, in a proper action by the party whose interests were injuriously affected, that the thing abated was a public nuisance. It seems, however, to have been held, that in a plea justifying such abatement or removal, it was not necessary to show that the defendant did as little damage as might be, (*Hawk.* § 12, *before cited :*) and this clearly shows the favor with which the common law regarded this summary process of abating a public nuisance. No one has probably ever suggested that Magna Charta interfered with the process of summarily abating a public nuisance. If the abatement involved the deprivation of property, the owner was deprived of his property "by due process of law ;" if the thing abated was a public nuisance for then

the summary process of abatement was authorized by the common law, and any process authorized by law must be due process. The common law was adopted by our state constitution, and if this summary process of abating a public nuisance was "due process," within the meaning of Magna Charta, there is not a room for doubt, that it is " due process," within the meaning of our state constitution. It was substantially held to be due process, without any trial by jury, in *Hart* v. *The Mayor, &c. of Albany, (supra.)* The temporary injunction in this case restrains the defendants from interfering with the property, or the manufacturing business of the plaintiff, at Hunter's Point. The defendants have justified, or undertaken to justify, their proceedings, as public officers, under the metropolitan sanitary act ; but if the business or manufacturing process of the plaintiff was a public nuisance, how can I, in deciding this motion, disregard the common law rights of the defendants *as citizens* to abate the nuisance ? I see no principle upon which I can. *(See Denning* v. *Roome,* 6 *Wend.* 651, 655.) If the metropolitan sanitary act is constitutional, it did not abolish or impair the common law right or remedy, (*Wetmore* v. *Tracy,* 14 *Wend.* 250, 255;) and if it is unconstitutional and void it could not. Hence my conclusion, that having determined at the hearing that the injunction ought not to be continued, on the ground that the business or manufacturing process of the plaintiff was not a nuisance, I might have decided the motion, without the constitutional objections urged by the plaintiff's counsel; but in view of any possible doubt as to the correctness of this conclusion, or as to the propriety of resting my decision exclusively upon the common law right of the defendants in common with others, as citizens, to abate the nuisance, and considering the great public purpose and importance of the metropolitan sanitary act, I will look at the case and briefly examine the constitutional objections, as if the injunction was to be continued, unless the defendants were justified as officers under the act.

Coe *v.* Schultz.

1. As to the constitutional objection that the execution of the order would deprive the plaintiff of his property "without due process of law." I am not willing to concede that the legislature can create a public nuisance, or a new definition of a public nuisance, unknown to the common law decisions. I am not willing to concede that the legislature can constitutionally declare an act or thing to be a common nuisance, which palpably, according to our present experience or information, is not and can not be, under any circumstances, a common nuisance, by the common law definition, or common law decisions. I am not willing to concede that the legislature can constitutionally declare or authorize any sanitary commission or board to declare the keeping or the use, in any way, of sugar or vinegar to be a common nuisance, because the one is sweet and the other sour, or for any other reason. By such an unlimited power it is easy to see that any citizen might be deprived of his property without compensation, and without any colorable pretext that the public good required such deprivation. It is not impossible to conceive that at some future day there might be a legislator thinking the use of water in any way to be a nuisance. But my construction of the metropolitan sanitary act is, that it does not authorize, and was not intended to authorize, the board, or any part or member of it, to redefine a nuisance or common nuisance, or to declare an act or thing to be a common nuisance which, clearly, under any circumstances, is not or can not be such at common law. Notwithstanding the evidently labored effort, by section 14 and other parts of the act, to give the board full and complete power to remove, abate, suspend, alter, improve and purify any thing dangerous to life or health, as a public nuisance, yet my construction of the act is, that the question whether the thing which has been or is to be removed, abated, &c. was or is dangerous to life or health, or was or is a public nuisance, *is a jurisdictional* question, but of course independent of the special provision in the act to this effect ; considering that the act not

only gives power, but imposes a great public duty, on such a question, all presumptions are and should be in favor of the board. This appears to have been Justice Ingraham's construction of the act in *The Mayor, &c. of New York* v. *The Board of Health.* One part of the opinion of Judge Daly in *Charles Cooper and another* v. *Jackson S. Schultz and others,* goes to show that it was his construction. This being the construction of the act — conceding, for the purpose of answering this constitutional objection, that the execution of the order of the board in question might, or would, deprive the plaintiff of his property — yet it is clear that it can not be said that the plaintiff would thereby be deprived of his property " without due process of law," if the business or manufacturing process of the plaintiff was a public nuisance ; for it can not be doubted that the legislature had the power to give the board the right to do, and to make it their duty to do, the same thing which any citizen might do of his own motion. The history of health laws relating to this city, from 1794 to the passage of the metropolitan act, shows that the legislature have from time to time exercised this power ; and I suppose the charter of a municipal corporation carries with it the power and the duty of protecting the life and health of the inhabitants of the municipality from nuisances. If, then, the summary abatement of a public nuisance, including the deprivation of property by a citizen, of his own motion, and without a preliminary trial by jury, at common law, was " due process of law," then the execution of the order of the board in question would be " due process of law," though its execution might deprive the plaintiff of his property without compensation.

2d. As to the constitutional objection that the act establishes an inferior local court, within the prohibition implied by article 6 of the constitution. In the first place, though the powers conferred by the act are unquestionably mainly judicial, yet I do not think that the board can properly be called a court ; but if otherwise, there are two decisions of

the Court of Appeals which prevent me from sustaining the objection. The one is the metropolitan police decision, (*The People* v. *Draper*, 15 *N. Y. Rep.* 532,) and the other is *Sill* v. *The Village of Corning*, (15 *Id.* 297.) The first shows that the legislature had the power to create this new political or governmental district, called the metropolitan sanitary district, and to provide for the *appointment* of its officers ; the second shows that this district not being a city, though including *more than one city*, the legislature had the power to provide for the organization of an inferior local court in it.

3d. As to the constitutional objection that the act authorizes the board to pass laws. It is plain that the by-laws and ordinances which the board is authorized by the act to pass, are not laws, within the meaning of the cases holding that the legislature can not delegate its legislative trust ; that they are not *such* laws, any more than the by-laws of any corporation. In fact the act, without using express words of incorporation, by the powers and capacities conferred, especially the power to make by-laws, creates the board a body politic, or corporate ; and if the legislature had power to create the sanitary district and the sanitary board, I can not see why the legislature had not the power to give the board the right to pass by-laws and all proper ordinances to carry out the purpose of such creation. In fine, I think it follows from the metropolitan police decision, and the foregoing construction of the metropolitan sanitary act, that it is constitutional. Of course, that the board might undertake to make by-laws or pass ordinances not authorized by the act, and outside of the purpose for which the district and the board were created, is a consideration which has no bearing on the question as to the constitutionality of the act. The temporary injunction must be vacated, and the motion to continue it denied, with $10 costs.

[NEW YORK SPECIAL TERM, November 5, 1866. *Sutherland,* Justice.]