Manhattan Manufacturing and Fertilizing Co. v. Van Keuren.

23  251
56  623

THE MANHATTAN MANUFACTURING AND FERTILIZING
COMPANY vs. VAN KEUREN.

1. Upon the argument of a rule to show cause why an injunction should not issue in a case where an injunction had been granted in part, the question whether the existing injunction should not be removed, cannot be considered. That can be removed only upon notice and motion to dissolve, in accordance with the rule of the court.

2. Any citizen, acting either as an individual or as a public official, under the orders of local or municipal authorities, whether such orders be or be not in pursuance of special legislation or chartered provisions, may abate what the common law deemed a public nuisance. In abating it property may be destroyed, and the owner deprived of it without trial, without notice, and without compensation.

3. Such destruction for the public safety or health, is not a taking of private property for public use, without compensation or due process of law, in the sense of the Constitution.

*Mr. T. N. McCarter* and *Mr. J. B. Vredenburgh,* for complainants.

*Mr. Gilchrist,* Attorney-General, and *Mr. McGill,* for defendant.

THE VICE-CHANCELLOR.

The complainants are engaged in manufacturing a fertilizer, and carry on their business in Jersey City, near Communipaw bay. The fertilizer is made of the blood of animals killed at the abattoir of the New Jersey Stock Yard and Market Company, a portion of whose premises is occupied by complainants. The blood is carried about one hundred yards, to complainants' factory, and is there boiled. When thus cooked, and in solid form, it is mixed with sulphate of soda, or salt. It is then dried in an oven, and being mixed with other substances, is ground in a mill, and becomes ready for use. The complainants commenced business at their factory in October, 1870, and continued it till July last, when interrupted by the acts of the defendant which have occasioned this suit.

The defendant, Benjamin Van Keuren, is the street commissioner of Jersey City, and, as such, on the 1st of July last, gave notice to the complainants that, upon complaint made to him, he had entered their premises, and ascertained there the existence of a nuisance, in violation of an ordinance of the city ; that such nuisance consisted of putrid and decaying animal matter and offensive substances, emitting noxious and unwholesome smells, and requesting complainants to abate the same within twenty-four hours.

The notice being disregarded by complainants, the defendant, with twenty-five policemen and others, about one o'clock in the night of the 18th of July, entered their factory by force, and proceeded to abate the alleged nuisance, by taking off the eccentric rods of the machinery for grinding the baked blood, removing the belting or gearing, damaging and carrying off parts of machinery and property, and committing other acts to put a stop to complainants' works. The character and extent of the damage inflicted and threatened to be inflicted, are differently stated by the parties, but while said by the defendant to have been necessary and lawful, are not deemed to have been important.

On the 24th day of July, the complainants exhibited their bill of complaint, and an injunction was ordered by the Chancellor to a part of the extent prayed for in the bill. It restrained the defendant from destroying, breaking, or injuring any of the machinery or gearing, from burning complainants' factory, and from burning or destroying any of their property. In addition to this, the bill asks that the defendant be further restrained from resorting to any forcible proceedings to hinder or impede the operation of complainants' works, till they be lawfully adjudged to be a nuisance.

The order granting the injunction to the extent above stated, directed the defendant to show cause before the Vice Chancellor why an injunction should not issue pursuant to the prayer of the bill.

The rule to show cause has been argued upon bill, answer, and affidavits, and was claimed by defendant's counsel to

present for discussion and decision the question whether the existing injunction should not be removed, as well as the question whether the additional injunction referred to in the rule should not be allowed. This claim is not warranted, I think, by the language or the spirit of the rule. The existing injunction can be removed only upon notice and motion to dissolve. Without such notice and motion, I shall not assume to consider the propriety of its continuance. It prohibits forcible proceedings by the defendant to a certain extent, and of a certain specific kind. It may properly be regarded as depending on principles and reasons not applicable to the injunction referred to in the rule to prohibit all forcible proceedings whatever. The proper exercise of powers within the limits of a reasonable discretion, is one thing: the abuse or perversion of them, is another. The latter may be restrained, while the former will not. Whether or not there has been such abuse, I do not mean to decide or to intimate, but simply to point out the plain and important distinction. It may be lawful to purge premises of a nuisance, and unlawful to burn or destroy them. How much force, or what kind, may be permissible in abating it, is obviously a different inquiry from the permissibility of any.

The insistment of the complainants is, that the street commissioner has no right to use any force till their business or works shall have been lawfully adjudged to be a nuisance; that the ordinance, by its terms, does not give the right, and if it does, it is so far illegal and invalid; that the city charter does not authorize the passage of such an ordinance, and if it does, its provisions to that effect are unconstitutional and void.

The fourth subdivision of the twenty-fourth section of the charter gives power to the Board of Aldermen "to declare what shall be nuisances in lots, streets, docks, wharves, or piers, and to provide for the removal, sale, and other disposition of all such nuisances." *Pamph. Laws* 1871, *p.* 1107.

The ordinance was approved August 18th, 1871. By section first, "all slaughter-houses or other buildings, whence offensive smells are emitted, are declared to be nuisances."

By other sections, the street commissioner, upon complaint made, is empowered to enter any building or premises to ascertain if a nuisance exists, and on ascertaining that it does, to give notice requiring its abatement within twenty-four hours, and if such notice be disregarded, to proceed to abate it by the removal of such portions of the machinery, or other matter or thing, as may be necessary for the creating of the nuisance, and to take the same to the public yard of the city for sale.

This ordinance is assailed as authorizing unreasonable searches and seizures; the taking of property without due process of law; the conviction of an offence without being heard; the deprivation of trial by jury, and the taking of private property for public use, without compensation.

Whether their business or works are a nuisance or not, the complainants say, is a question which should be determined by a legal tribunal in a trial in which they can be heard; that the street commissioner cannot himself adjudge their works to be a nuisance, and proceed to abate them, without a violation of their lawful and constitutional rights, which this court will restrain. Such violations are, in some cases, enjoined, though the party has a remedy at law; and as the complainants' present application cannot stand upon the ground of irreparable wrong, it must be placed upon their strict constitutional rights. In that view, an injunction will not issue, if the legal questions are uncertain, or open to dispute; the party will be left to his action at law, where such controverted questions can be determined by the courts of law whose appropriate province it is to determine them. But, in this case, can they be said to be fairly matters of doubt? Notwithstanding the ability and learning with which the complainants' case has been urged, I am of opinion they cannot. I think it quite clear that the constitutional limitations discussed by their counsel, and illustrated in the cases referred to at the argument, have no application to the power of a municipal government to pass ordinances for the control or

abatement of nuisances, nor to the provisions of the ordinance in question in this suit.

At common law, it was always the right of a citizen, without official authority, to abate a public nuisance, and without waiting to have it adjudged such by a legal tribunal. His right to do so depended upon the fact of its being a nuisance. If he assumed to act upon his own adjudication that it was, and such adjudication was afterwards shown to be wrong, he was liable, as a wrong-doer, for his error, and appropriate damages could be recovered against him. This common law right still exists in full force. Any citizen, acting either as an individual or as a public official under the orders of local or municipal authorities, whether such orders be or be not in pursuance of special legislation or chartered provisions, may abate what the common law deemed a public nuisance. In abating it property may be destroyed and the owner deprived of it without trial, without notice, and without compensation. Such destruction for the public safety or health, is not a taking of private property for public use, without compensation or due process of law, in the sense of the Constitution. It is simply the prevention of its noxious and unlawful use, and depends upon the principles that every man must so use his property as not to injure his neighbor, and that the safety of the public is the paramount law. These principles are legal maxims or axioms essential to the existence of regulated society. Written constitutions pre-suppose them, are subordinate to them, and cannot set them aside. They underlie and justify what is termed the *police power* of the state. By virtue of that power, numerous and onerous restrictions and burdens are imposed upon persons and property which, for other purposes or on other grounds, would be prohibited by the constitutional limitations sought to be applied in this suit. *Cooley on Const. Lim.* 572; *Potter's Dwarris on Statutes* 444.

In *Coe* v. *Schultz*, 47 *Barb.* 64, a case not cited at the argument, the nature of this power and its exercise for the suppression of nuisances, are fully and clearly exhibited. The Metropolitan Board of Health made an order that the manu-

facture of poudrette at Hunter's Point be forthwith discontinued, until the mode of it should be so altered that no odor or fumes could escape into the external air; and that the order be executed by the police. A temporary injunction restraining such execution was dissolved upon argument. Constitutional objections were set up against the validity of the order, and its execution resisted, because depriving the defendant of property without due process of law. " No one," it was there said by the court, " has probably ever suggested that Magna Charta interfered with the process of summarily abating a public nuisance. If the abatement involved the deprivation of property, the owner was deprived of his property by due process of law, if the thing abated was a public nuisance; for then the summary process of abatement was authorized by the common law, and any process authorized by law must be due process. The common law was adopted by our state Constitution, and if this summary process was due process, within the meaning of Magna Charta, there is no room for doubt that it is due process, within the meaning of our state Constitution." Again, it was said " the defendants have justified, or undertaken to justify, their proceedings as public officers under the metropolitan sanitary act; but if the business or manufacturing process was a public nuisance, how can I, in deciding this motion, disregard the common law rights of the defendants as *citizens* to abate the nuisance? I see no principle on which I can."

In the present case the complainants deny that their business or works are a nuisance. The defendant avers that they are, and affidavits are offered on both sides in support of these assertions. In the view I take of the case, the defendant acts at his peril. His own adjudication of the fact of a nuisance will not protect him, as would the judgment of a court. It was said at the argument that actions had been commenced against him for the recovery of damages, and are now pending. It is unnecessary for me now, and in my judgment would be improper to express an opinion upon the question

to be determined in such actions. It is sufficient to say that the affidavits to show the offensive and noxious odors emitted and pervading at times the vicinity of the works, are numerous and explicit. They are sufficient to prove that the commissioner's conclusion as to character of complainant's business and works, was not entirely without evidence to support it. The correctness of the conclusion is not now to be determined.

For the reasons that no violations of the complainants' constitutional rights are shown to be threatened, such as this court may, in some instances, interpose to prevent, and that the complainants' damages, if any shall be sustained, are not shown to be irreparable at law, I am of opinion that the application for the injunction must be denied.

Costs to abide the event of the suit.