THE STATE *v.* FLANNAGAN.

CRIMINAL LAW.—*Toll-Gate on Turnpike out of Repair.*—*Statute Construed.*—*Nuisance.*—The inevitable inference from section 1 of the act of March 5th, 1859, 1 R. S. 1876, p. 671, is, that a turnpike company has no

right to maintain a toll-gate upon a part of its road which has remained out of repair for an unreasonable time ; and that if such company persists in maintaining a toll-gate upon any part of its road so remaining out of repair, such toll-gate becomes an obstruction which may be abated as a public nuisance.

SAME.—The franchise of such company in such case lapses, at least until the road is duly put in repair.

SAME.—*Breaking Down Toll-Gate.*—A traveller who, without committing a breach of the peace, breaks down a toll-gate so maintained, is not guilty of the misdemeanor defined in section 66, 2 R. S. 1876, p. 479.

From the Montgomery Circuit Court.

*T. W. Woollen,* Attorney General, *G. W. Collings,* Prosecuting Attorney, *P. S. Kennedy, W. T. Brush, D. A. Roach* and *E. C. Snyder,* for the State.

*G. W. Paul* and *J. E. Humphries,* for appellee.

NIBLACK, J.—This was a prosecution upon information, against Harrison Flannagan, under section 66 of the misdemeanor act, 2 R. S. 1876, p. 479, for breaking down a toll-gate belonging to the Crawfordsville and Eastern Turnpike Company.

Upon a trial by a jury, a verdict of acquittal was returned and the defendant discharged.

The State has brought the cause to this court upon certain questions of law, reserved at the trial under section 119 of the criminal code. 2 R. S. 1876, p. 405.

Harvey Solan testified on behalf of the State at the trial, as follows :

" I have been, since the 1st day of December, 1878, the keeper of a toll-gate belonging to the Crawfordsville and Eastern Turnpike Company ; the toll-gate is on a part of the road owned by that company, known as the ' Hill's Factory Road,' being a branch, or extension, of their main line ; the road has been used and travelled and toll paid and collected on the same as a turnpike or gravel road for a number of years. On the 17th day of January, 1879, the defendant, Harrison Flannagan, while travelling upon

this road, stopped at the toll-gate kept by me with his team, which was attached to a sled, and, the toll-gate being closed, demanded that I should raise the gate and let him pass, which I refused to do unless he would pay me the toll due for travelling over the road that time. He refused to pay the toll demanded, but said he would pay for travelling over the north end or main line of the road. I told him I would not raise the gate unless he paid toll for all the road that he had travelled over in making that trip. He said that he would not do so, and that he intended to break down the gate and go through, and wanted to know if I would make any resistance. I told him that I did not know that I would; he then took a piece of timber and broke the gate in the middle; the gate was fastened on a pivot at one end, and on a post, so as to be convenient for raising and shutting down. At the time the defendant broke the gate, it was closed and fastened with a padlock at one end. After breaking the gate, the defendant twisted one piece from the post on which it was fastened, put it on his sled, carried it about a mile, and threw it in a hollow. The damage done to the gate was about $1.50 or $2.00. The toll-gate was situated on the extension or branch road I have mentioned, in Montgomery county, Indiana, and was the property of the Crawfordsville and Eastern Turnpike Company, and the road on which it was located was the property of that company."

Volney Q. Irwin also testified on behalf of the State, as follows:

" That the road on which the toll-gate in question was located was a branch, two or three miles long, of the turnpike road of the Crawfordsville and Eastern Turnpike Company; that the gate was broken by the defendant January 17th, 1879, and the damage was $1.50 or $2.00; that he was president of said Turnpike Company."

Over the objection of the prosecuting attorney, Henry Binford was permitted to testify on behalf of the defendant, as follows :

" I have known the road upon which the toll-gate mentioned in the information was located, for a long time. I knew it before the company styling itself the Crawfordsville and Eastern Turnpike Company claimed to own it. I have known it ever since that pretended company has been exercising, and claiming the right to exercise, ownership over it, and it has not, since that company has been controlling and collecting toll for travelling over it, been in repair, being muddy, and little or no gravel upon it. In fact, there were many places where it was impossible to tell that any gravel had ever been placed upon it. It had, at the time the gate was broken by the defendant, been out of repair for an unreasonable length of time, six months or more, and was inconvenient on that account for travel. Wagons would cut through after any slight rain, and, at many places, it was almost impassable, and never did form a hard, smooth, even surface, there being only three or four inches of gravel put on it at the first."

On cross-examination, the said Binford further said :

" The road I am testifying about is only a part of the entire road which the Crawfordsville and Eastern Turnpike Company claims to own. The other part of the road connects with the part in question at both ends, and is, and always has been, in better condition. The north end of the road in question has not been so bad as other parts, but it is owing to the fact that it is on high and dry ground, and not because the company has kept it up."

The court thereupon, on its own motion, instructed the jury that "A turnpike company may erect and maintain toll-gates at such points on its road as the directors of the company may choose for that purpose, and may collect toll thereat from persons travelling over its road, and may

close the gate on persons refusing to pay toll : *Provided,* however, that the part of the road at which the toll-gate is located is not out of repair, and has not been out of repair an unreasonable length of time. If the toll-gate of a turnpike company is situated on a part of the road which is, and has been for an unreasonable length of time, out of repair, such road having been, prior thereto and at the time of the location and constructing of said turnpike, a public highway, and the turnpike [company] owning only an easement over it since, [and] if in such case, it having been at the time of such travel out of repair an unreasonable length of time, it would have lapsed into the condition of an ordinary public highway, free to all, and if a person travelling over the road is obstructed by such gate, and prevented from proceeding on his journey, he may use as much force as is necessary to accomplish the purpose without committing a breach of the peace, although a part of the road of such company, over which such person has travelled, is not out of repair. Such company has no right to maintain a toll-gate on a material part of the road which is out of repair, and has been so for an unreasonable length of time, to collect toll for travelling over a part of the road that is in repair, which previous to and at the time of its construction was a public highway."

To the giving of which instruction the prosecuting attorney at the proper time excepted.

The prosecuting attorney then requested the court, on behalf of the State, to instruct the jury, that, "If any part of the road in question was in good repair, the company had a right to erect a toll-gate on such road and collect toll from any one travelling thereon for the part of such road travelled over as was in good condition, and any one travelling on such road, if any part of the same was in good condition would have no right to break down such toll-gate." Which instruction the court refused to give, to which refusal the prosecuting attorney also excepted.

Questions of law were severally reserved by the prosecuting attorney upon the admission of the testimony of Binford, upon the giving of the instruction first above set out, and upon the refusal of the court to give the instruction lastly above named, and it is to those questions of law, so reserved, that our attention has been directed by this appeal.

The act of March 5th, 1859, prohibiting turnpike, road and other similar companies from collecting tolls, in certain cases, 1 R. S. 1876, p. 671, sec. 1, provides that the owners of such roads shall not be entitled to collect and receive tolls upon such roads, when the same have become, and have been permitted to be for an unreasonable length of time, out of repair, and that prohibition extends to parts of such roads so becoming, and so for an unreasonable length of time remaining, out of repair.

The inevitable inference from that provision of the statute is, that a turnpike company has no right to maintain a toll-gate upon a part of its road so remaining out of repair for an unreasonable time, and that if such company shall persist in maintaining a toll-gate upon a part of its road over which its right to collect tolls on such part has ceased, such toll-gate becomes an obstruction upon its road, and liable to be abated as a public nuisance.

Cooley on Torts, in speaking of the abatement of nuisances, at page 46, says :

" The question who may abate a nuisance may depend upon whether the nuisance is public or private. If it is a private nuisance, he only can abate it who is injured by its continuance : if it is a public nuisance, he only may abate it who suffers a special grievance not felt by the public in general. Therefore, if one places an obstruction in a public street, an individual who is incommoded by it may remove it ; but unless he has occasion to make use of the highway he must leave the public injury to be re-

dressed by the public authorities.   It is the existence of an emergency which justifies the interference of the individual.

" In permitting this redress, certain restrictions are imposed to prevent abuse or unnecessary injury.   One of these is, that the right must not be exercised to the prejudice of the public peace : therefore, if the abatement is resisted, it becomes necessary to seek in the courts the ordinary legal remedies.   Another is, that, as a general rule, before resorting to such extreme measures, the party responsible for the nuisance should be notified of its existence, and requested to remove it ; and the forcible abatement would only be justified when, after lapse of reasonable time, the request was not complied with.   This, however, is by no means a universal rule."

Nuisances created by an act of commission, in defiance of the rights of those whom such nuisances injure, are enumerated as exceptions to the rule requiring notice to the party committing them, before abatement.

The doctrine as to the abatement of nuisances, announced as above by Cooley, is well supported by numerous American cases, and may, we think, be safely accepted as an apt and succinct statement of the law on that subject, as applicable to the admission of Binford's testimony.

Applying the law as thus stated, we see no error in the admission of the testimony of Binford, as complained of by the appellant.

The instruction given by the court said to the jury, in effect, that when a certain class of turnpike companies have, by neglect to repair their roads, forfeited their rights to charge and collect tolls, such roads lapse into the condition of ordinary public highways and become free to all.   We see no reason why the court might not have gone further, and said that, under the various statutes of the State, when any turnpike company has forfeited its right to col-

lect and receive tolls, its road lapses, for the time being, at least, into the condition of an ordinary highway, and becomes free to all; that is, all acquire the right to pass over such road free of charge.

This forfeiture of the right to collect tolls is a matter quite distinct from a forfeiture of the franchise of the company, and may prove to be only a temporary forfeiture, dependent upon the subsequent action of the company itself. See 1 R. S. 1876, pp. 671, 672, 673.

The forfeiture of the right to collect tolls does not necessarily forfeit the franchise of the company, and in that consists a distinction which ought to be observed while considering some of the authorities cited by the appellant.

With this explanation, we see no objection to the instruction given by the court as above set forth. Construing its evident meaning as we do, we regard it as being in harmony with the weight of authority on the subject of the abatement of nuisances, as applicable to the evidence in the cause. *Gunter* v. *Geary*, 1 Cal. 462; *El Dorado Co.* v. *Davison*, 30 Cal. 520; *State* v. *Parrott*, 71 N. C. 311; *Burnham* v. *Hotchkiss*, 14 Conn. 311; *Harvey* v. *Dewoody*, 18 Ark. 252; *Clark* v. *The Lake, etc., Ice Co.*, 24 Mich. 508; *Selman* v. *Wolfe*, 27 Tex. 68; *The Manhattan, etc., Co.* v. *Van Keuren*, 23 N. J. 251; *Earp* v. *Lee*, 71 Ill. 193; Addison Torts, sec. 270.

What we have said sufficiently indicates that there was no error in the refusal of the court to give the instruction prayed for on behalf of the State.

The appeal is not sustained.