## SUPREME COURT.

John W. Bridenbeker, Treasurer of the Frankfort Cheese Factory, appellant, agt. John L. Hoard, respondent.

An action to recover several penalties under chapter 361 of the laws of 1865, for *bringing watered milk to a cheese factory*, to be manufactured into cheese, may be maintained by and in the name of the *treasurer of the association*, against *a member of the association.*

*Fifth District General Term, January,* 1867.
*Before* Bacon, Mullin *and* Foster, *Justices.*

Appeal from a judgment of non-suit ordered at the Herkimer circuit, in May, 1866, before Bacon, Justice. The facts appear in the opinion.

S. & R. Earl, *for appellant.*

The action was brought to recover penalties under chapter 361, laws of 1865, for bringing watered milk to a cheese factory.

The defendant in his answer, besides a general denial, seems to take two other grounds of defense.

(1) That the Frankfort Cheese Factory was not such an association as would enable the plaintiff to maintain the action as its treasurer.

(2) That the plaintiff alone could not maintain the action, as there were other persons also interested.

The judge at the trial held that the plaintiff could not maintain the action, and excluded the proof, and non-suited him.

I. The Frankfort Cheese Factory is such an association or company as can sue in the name of its treasurer. (*Laws of* 1849, *chap.* 258; *Laws of* 1851, *chap.* 455; *N. Y. Marble Iron Works* agt. *Smith,* 4 *Duer,* 362; *Tibbitts* agt. *Blood,* 21 *Barb.* 650; *Corning* agt. *Green,* 23 *Barb.* 33; *Witherhead* agt. *Allen,* 28 *Barb.* 661; *Dewitt* agt. *Chandler,* 11 *Abb. Pr. R.* 459, 470.)

The dictum of Judge Shankland, in *Austin* agt. *Searing*

(16 *N. Y.* 112), is without reason, and wholly unauthorized.

II. Even if this were not so, the incapacity of the plaintiff to sue, and the defect of parties, appear upon the face of the complaint, and hence this objection could only be raised by demurrer and not by answer, and is waived in this case. (*Code,* §§ 144, 147, 148 ; *Ingraham* agt. *Baldwin,* 10 *How.* 162 ; *Baggett* agt. *Bardger,* 2 *Duer,* 160 ; *Gassett* agt. *Crocker,* 10 *Abb.* 133 ; *Dennison* agt. *Dennison,* 9 *How.* 246 ; *Zabriskie* agt. *Smith,* 3 *Kern.* 322, 336 ; *Fosgate* agt. *The Herkimer Manufacturing and Hydraulic Co.* 12 *N. Y.* 580.)

And when a cause of action is set forth in the complaint, in favor of some one against the defendant, it cannot be said that the complaint does not state facts sufficient to constitute a cause of action. (*Bank of Lowville* agt. *Edwards,* 11 *How.* 216 ; *Vibert* agt. *Frost,* 3 *Abb.* 120 ; *Myers* agt. *Machado,* 6 *Abb.* 198 ; *Hobert* agt. *Frost,* 5 *Duer,* 672.)

III. At all events, the action is properly brought under chapter 361, laws of 1865.

All that the statute requires is, that the suit should be " for the benefit of the person or persons, firm or association or corporation, or their assignees, upon whom such fraud shall be committed."

This action is brought for the benefit of the association by the plaintiff, who is a member and the acting treasurer.

IV. The fact that the defendant was a member of the association, can make no difference. Under the statutes of 1849 and 1851, an action can be brought in the name of the president or treasurer, against a member in a proper case, as well as against any other person.

In reference to the commencement and defense of actions, these associations under the statutes, are clothed with corporate powers. See section 5, of the law of 1849.

Unless this were so, the object of these statutes would, in many cases, be defeated.

V. But if we are so far wrong, then this action may be treated as an action by Bridenbecker alone, against the defendant, and all the allegations as to his representative

character may be regarded as surplusage. (*Davis* agt. *Garr*, 6 *N. Y.* 124; *Merritt* agt. *Seaman*, 6 *N. Y.* 168.)

(1) The plaintiff alleges facts in his complaint showing that he individually was defrauded by the act of the defendant.

(2) The plaintiff as a person defrauded, could under the act of 1865, sue alone for the penalty.

(3) The statements in the complaint in relation to the representative character of the plaintiff, do not vitiate, while the facts alleged show that the plaintiff was entitled to sue in his own right.

(4) To test the ruling of the judge, all the facts alleged in the complaint may be taken as admitted; and it is no answer to the facts that the plaintiff could not maintain the action as treasurer; for conceding that to be so, he could maintain the action in his own right.

But no such defense or objection as we are now considering, was foreshadowed in the answer. If it were allowed to prevail, it would be a surprise to the plaintiff, and would work him a great wrong.

(5) No court ought to be astute to discover formal defects, where the act complained of was of so mean and dishonest, a kind as that in this case. A new trial will do the defendant more good than harm if he is innocent; and if he is not, he should not complain if formal defects are disregarded for the purpose of bringing him to justice.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide the event.

FRANCIS KERNAN, *for defendant.*

I. The action is brought by the plaintiff as treasurer of the Frankfort Cheese Factory; and unless he is entitled to recover in this capacity the penalties claimed, he was properly non-suited. (*Complaint*, 6 to 16; *Answer*, 17 to 21; *Trial*, 32 to 34.)

II. The plaintiff is not entitled to recover in his capacity as treasurer.

1. He clearly could not maintain the action under the statute, as originally passed, as to actions by and against joint stock companies and associations (3 *R. S. 5th ed. p.* 777). This only applied to what were known in the law as "joint stock companies or associations" (3 *R. S. supra,* §§ 122 *to* 125).

2. The Frankfort Cheese Factory, was in no legal sense a joint stock company or association (*Evidence,* 27 *to* 32).

Joinst stock companies or associations, are constituted by articles of association; the stock is divided into shares, transferable by assignment or delivery, and the business is conducted by a board of trustees. (*Story on Part.* § 164; 3 *R. S. supra,* §§ 123, 125.)

3. The amendatory act of 1851 does not authorize the action. (*Chap.* 455 *of Laws of* 1851; *found in* 3 *R. S. 5th ed. p.* 778.)

This act should be construed with reference to and in harmony with the original act. It at the most extends only to companies or associations, in the nature or having the characteristics of joint stock companies. It does not mean that a loose association like the one in question, can sue and be sued, by a person they may name as president or treasurer. Such a construction would lead to great confusion (*Austin agt. Searing,* 2 *Smith,* 113, 117, 125).

4. The defendant was a member of this association. Under these statutes, the association by its treasurer, cannot maintain an action against one of its own members. The suits authorized to be prosecuted in the name of the officer, are suits by and against the association; not suits accruing to one or more members of the association against other members of the same association. (*See Statutes, supra.*)

III. The plaintiff, as treasurer of the association, could not maintain an action against the defendant, a member of the association, for the penalties given by the statute.

1. The penalty is given by the statute to the person or persons, firm or association, or corporation, upon whom the fraud shall be committed (*Laws of* 1865, *p.* 638, § 1).

2. Both by the Revised Statutes and the Code of Procedure, the action must be in the name of the party or par-

ties injured, and entitled to the penalty. (3 *R. S. 5th ed. p.* 783 ; *Code,* § 111.)

3. The plaintiff as treasuer, had no right to, or interest in the penalty. If recovered by him as treasurer of the association, the funds when collected, would in part belong to the defendant, who was a member of the association. If the plaintiff could rightfully prosecute the action and is defeated, the defendant is responsible for a portion of the costs.

4. The action should have been in the name of the persons injured by the wrongful act of the defendant. They are entitled to the penalty, and the suit should be in their name.

5· If it was the intention of the legislature to have authorized the action for the penalty, in the name of the treasurer of the association against one of its members, the act would have so stated.

IV. The ruling of the judge at the circuit was correct, and the judgment should be affirmed.

*By the court,* FOSTER, J. The action was brought to recover several penalties under chapter 361, of the laws of 1865, for bringing watered milk to a cheese factory, to be manufactured into cheese.

The first count of the complaint alleged, that during the months of May, June, July, August, September and October, 1865, the plaintiff and a large number of other persons, more than seven in all, including the defendant, were associated together for the purpose of manufacturing and selling cheese, at Frankfort, in Herkimer county. That the name of the association was "The Frankfort Cheese Factory." That during all that time all the persons belonging to the association brought their milk to the factory, and all the milk was mingled together and manufactured into cheese. That the cheese was then cured and prepared for market. That the factory was managed and the cheese sold by a committee or agents, chosen or appointed by the members of the association. That after the cheese was sold, from time to time, the expenses of making, curing and preparing the

cheese for market, were first deducted from the proceeds of the sales, and the balance was divided among, and paid to the members of the association, in proportion to the quantities brought by each of them.

That the plaintiff was the treasurer of the association, and that he commenced the action for, and in behalf, and for the benefit of the said association. It then alleged that in the month of May, 1865, the defendant knowingly brought to the factory to be manufactured into cheese, a large quantity of milk diluted and mixed with water, which was mingled with the other milk brought to the factory; all of which was done by the defendant in violation of chapter 361, of the laws of this state, passed April 10, 1865, and claimed to recover a penalty of $100, for the benefit of the association.

There were six other similar counts in the complaint charging the same facts, except that the second count charged the defendant with the commission of a like offense, but at different times, within the months aforesaid, and claimed a distinct penalty of $100 for each offense charged.

The answer contained a general denial, and also three other separate answers; the first of which specially denied the existence of any such association as was alleged in the complaint. The second denied that the plaintiff sustained any representative capacity to the alleged association or partners of the cheese factory, and insisted that the plaintiff had not the capacity to maintain or prosecute the action, and that he should not be allowed to proceed therein; and the last of which alleged that divers other persons besides the plaintiff, brought milk to the cheese factory, at all the several times mentioned, and mingled the same with the milk of the plaintiff and of the defendant; that they are all interested in the allged cause of action; that they are within the jurisdiction of the court, and claimed that they were necessary parties to the action, and that the plaintiff should not be allowed to proceed without their being joined as parties.

On the trial, the plaintiff called Sidney A. Farington as a witness, who testified as follows: I had charge of the

Frankfort Cheese Factory in the years 1864 and 1865 ; the first year we received and manufactured the milk from about four hundred and fifty cows, and the second year from about eight hundred cows ; the plaintiff. John W. Bridenbecker, was the treasurer both years ; there were about eighty members of the association in the year 1864, and about eighty in the year 1865 ; there were no written articles of association, nor was there any written agreement signed by any of the members, or any written proceedings or by-laws, for the organization or conducting the business of the association ; the following was the system upon which the association was organized and conducted : each member brought to the factory the milk of his cows, and the milk was weighed and an account kept of the weight, and the milk was all mingled together and manufactured into cheese ; I had the charge of the factory, and for a consideration to be paid to me manufactured the cheese, and took care of the same until it was sold ; I was paid so much per hundred pounds of cheese ; there was a committee appointed by the members, whose duty it was to sell the cheese and pay over the proceeds to treasurer, and then the treasurer would first pay me, and deduct all expenses, and divide and pay the balance to all the members, in proportion to the quantity of milk by them respectively brought to the factory ; John W. Bridenbecker, the plaintiff, William Bridenbecker, Alexander Bridenbecker, John W. Davison, Hiram Joslin, Warner Borfy, John Thomas, the defendant Hoard, and others, were the members ; they varied and changed from time to time, during the season of 1865, but I don't recollect of any instance of any being taken out until in the fall, when the milk began to grow short to make cheese ; members could join or withdraw at pleasure ; the association was called and known by the name of the Frankfort Cheese Factory ; all the proceeds of the cheese sold in the year 1865, has been divided and paid over to the members, and the members now hold no joint property except the sum of $200 collected of another member for bringing watered milk to the factory, and this claim in suit against Hoard.

The plaintiff then offered to show all the facts alleged in the complaint *seriatim*, and particularly that the defendant brought watered milk to the factory, as alleged in the complaint, and upon all the occasions mentioned in the complaint.

To this evidence defendant's counsel objected, on the ground that the plaintiff in his character or capacity as treasurer, could not maintain this action against the defendant, for and on behalf of the alleged association or associates.

The court sustained the objection and excluded the evidence, and held and decided that the plaintiff as treasurer, had not legal capacity to maintain the action.

That an action in behalf of the association, for the penalties claimed herein, could not be maintained in the name of the plaintiff as its treasurer. That the plaintiff, as treasurer of the association, could not sue the defendant, who was a member, for the penalty.

To which rulings and decisions, the plaintiff duly excepted.

The plaintiff then rested, and the court on the motion of defendant's counsel, non-suited the plaintiff; to which ruling and decision the plaintiff also duly excepted.

Judgment of non-suit was accordingly entered, and the plaintiff brought his appeal.

It seems to be clear that the act of 1849, chapter 258, authorized actions to be brought in the name of the president or treasurer of joint stock companies or associations, only when such joint stock companies or associations were organized under some statute of the state; and that when organized without such authority, by whatever name they were called, they were really but copartnerships, and subject to the application of such rules in regard to suing and being sued, as apply in the case of copartners. (*Wells* agt. *Gates*, 18 *Barb.* 554; *Tibbitts* agt. *Blood*, 21 *Barb.* 650, 654-5.)

The act of 1851, chapter 455, as clearly appears, as well from its enacting clause as by the language of its first section, was intended to extend the right to sue by the president or treasurer to other classes of companies or associations than such as were embraced in the act of 1849; and in

unmistakable language " extended " the act of 1849 " to any company or association composed of not less than seven persons, who are owners of, or have an interest in, any property, right of action, or demand, jointly or in common, or who may be liable to any action on account of such ownership or interest."

And this court has repeatedly held that the act of 1851 did extend the right to sue to other companies and associations than such as were organized in pursuance of some statute, or such as were *quasi corporations*. (*Tibbitts* agt. *Blood, supra ; Corning* agt. *Greene*, 23 *Barb.*, 33 ; and *DeWitt* agt. *Chandler*, 11 *Abb. Pr. R.*, 459, 470.)   The only case cited to the contrary is that of *Austin* agt. *Searing* (2 *Smith, N. Y. R.* 113, 117 *and* 125), where Mr. Justice SHANKLAND, in his opinion, comes to the conclusion that the act of 1851, as well as that of 1849, relates only to the case of such *quasi* corporations ; this is of no weight as authority, for it appears from the case that the determination of that question was not involved in the decision, that it was decided upon another ground, and that all the other members of the court declined to express any opinion upon that question, or to concur with him.

Assuming that the testimony of Farrington was true, it cannot be doubted (if I am right as to the extension of the provisions of the act of 1849 and the provisions of the act of 1851), that, in a proper case of demand or claim of the association against a third person, it could sue, as was done in this case, in the name of its treasurer ; for it appears from his testimony that from the time the milk of the several persons who constituted the association reached the factory they all had an interest in it, and in the proceeds of it, in common with each other ; and that when the net proceeds had been reached, each of them was entitled to receive from the association just such proportion thereof, as the quantity of milk delivered by him, bore to the whole amount furnished by all the associates.

Whether the act of 1851, authorizes the treasurer to bring an action against an individual member of the association

formed as this was, in any case, has not, so far as I am aware, been determined ; and for the purposes of this case, I assume that it does not. And the question then arises, is such action conferred by the act of 1865, chapter 361 ? For if not, I am inclined to the opinion that the non-suit was right.

I have come to the conclusion above expressed, that when an action can be maintained at all by such company, it can be maintained in the name of the treasurer ; but the more important question is, does the act of 1865 allow such action to be brought against one of the corporators ? The language of the act, so far as it applies to this action, is that "whoever shall knowingly sell, supply, or bring to be manufactured to any cheese manufactory in this state, any milk diluted with water, &c., shall for each and every offense, forfeit and pay a sum not less than $25 nor more than $100, with costs of suit, to be sued for in any court of competent jurisdiction, for the benefit of the person or persons, *firm*, or association or corporation, or their assigns, upon whom such fraud shall be committed."

This language, " *whoever* shall *sell, supply or bring*, &c., to *any cheese manufactory in this state*," is comprehensive enough to include the case of one of the corporators who shall bring diluted milk ; and yet it does not necessarily follow that such is to be its construction, because we must be satisfied that the case of an offense committed by one of such associates, is within the language and the *intention* of the statute, before we can hold him liable for the penalty which it imposes. We are to ascertain, if we can, whether the legislature did intend to include such a case.

It is not claimed that such an action as this, could not be maintained by the treasurer of a *quasi* corporation, against one of the associates, for offenses against the act of 1865, nor can it be doubted—assuming the right of a treasurer to sue—that an association like the one in question, could maintain such action against any person who was not an associate. But how much more appropriate to denote an intention confined to these two classes of delinquents, would it have been to have used the words "whoever shall *sell*, or

bring to be manufactured *for himself*," &c., because one or the other of these ways would probably be adopted by one of the corporators, or by a stranger, who should take his milk to a cheese factory. For if a corporator, the milk would be the property of the corporation, and he would be entitled to his pay therefor, as between him and the corporation ; he would not be one of the owners of the milk or cheese, but would be entitled to any dividends on the amount of stock which he held in the corporation. And in the case of the stranger, he would either sell his milk, or have it manufactured for himself, and receive such quantity of cheese for a given quantity of milk, as should be agreed upon, irrespective of whether the association made or lost money in the business.

It appears to me from the language employed, that the legislature intended to include *all cases* of bringing diluted milk to a cheese factory to be manufactured, whether the act complained of was done by a corporator or associate.

It is to be presumed that the legislature, when the act of 1865 was passed, was aware of the extent to which the business of manufacturing cheese was carried on in cheese factories, and of the various kinds of companies formed for that purpose ; and it is a proper presumption for us, that when the act was passed, it was intended to reach *all* the mischiefs existing, and to extend a like remedy to every kind of association or partnership formed for the purpose of such manufacture, and to reach the violators of the provisions of the act, whether associates or not. And it being a matter of common notoriety, that a large proportion of all the cheese so manufactured, was made by such associations as the one in question, it is to be inferred that the legislature when it used the words " *any* cheese manufactory in this state," intended to embrace such cases. I have, therefore, come to the conclusion that this case was within the mischiefs sought to be remedied, and that it comes within the language and spirit of the statute.

I am also of opinion, that independent of the acts of 1849 and 1851, the act of 1865, which imposes the penalty, does

of itself give any of the associates the right to sue in his own name, for the benefit of all the members of the association; and that although the plaintiff sues as treasurer, it does not defeat the action, but should be held to be merely a description of the person.

The evidence offered was erroneously excluded, and the judgment of non-suit should be reversed and a new trial granted, with costs to abide the event.

Judgment was unanimously ordered accordingly.