## Wells & Webb *vs.* Gates and others.

In this state, personal responsibility, on the part of individuals constituting an association of any sort, to the full extent of the indebtedness of the association to third parties, can only be avoided by their becoming a corporation, or a *quasi* corporation.

Companies or societies which are not sanctioned expressly by the legislature, pursuant to some general or special law, are nothing more than ordinary partnerships; and the laws respecting them are the same.

Individuals, to the number of about 75, agreed in writing to form an association or company for the purpose of establishing a newspaper. They appointed three persons as managers for the first year, authorizing them, when sufficient capital should be subscribed and paid in, or secured, to establish and conduct the paper, for the benefit of the "stockholders." Two of the managers, when they thought a sufficient amount was subscribed to justify them in commencing the publication, sent an agent to New-York, to purchase a printing press and other necessary materials; who purchased the same of the plaintiffs, on credit.

*Held,* 1. That the persons signing the agreement, or articles of association, were liable, as partners, for the amount of the debt thus incurred.

2. That the associates were bound by the acts of the two managers who contracted the debt, although it did not appear that the third manager conferred and acted with them. That, the duty being ministerial, it might, if necessary, be presumed that the two had acted with the consent of the third.

This was an appeal, by the defendants, from a judgment entered at a special term. In February, 1850, a prospectus, dated at Rouse's Point, was issued, commencing as follows : " LAKE CHAMPLAIN BEACON. The want of a local paper in the northern section of Clinton county, has for some time been severely experienced," &c.   It then went on, setting forth the reasons for establishing a paper in that locality, at considerable length ; and concluded by stating that the " Lake Champlain Beacon" would be published weekly, the first number to be issued at Rouse's Point, on or before the 15th of May then next, at $2 per annum.   At the foot of this prospectus was the following agreement, signed by the defendants, about seventy-five in number, with the date of subscription, residence, and the number of shares taken by each subscriber : " We, the subscribers, *hereby* form an association or company, for the purpose of establishing a scientific journal or paper, for the dissemination of knowledge and to carry out the object in the foregoing prospectus.   *We* delegate George V. Hoyle, Calvin R. Averill and Rufus Heaton, as managers for the first year, and when sufficient capital shall be subscribed, paid in, *or* secured, they are authorized to establish and conduct said paper for the benefit of the stockholders. The stock of this company shall be in shares of five dollars each, and when the first number shall issue, or be published, a meeting of the stockholders may be called to make such regulations and by-laws as shall be necessary for the government of said association."

Two of the managers, only, acted, viz : Averill and Heaton. They appointed a third person to go to New-York and purchase a printing press, and the materials, type, &c. necessary to establish the paper.   The agent accordingly purchased from the plaintiffs articles, amounting to $686.46, the bills for which were made out in the name of Averill and Heaton.   The press and materials were forwarded to Averill and Heaton, who went on and printed the paper for one year.   This suit was brought to recover of the defendants the price of the articles bought of the

plaintiffs. It was tried at the New-York circuit in April, 1853, before Justice Edmonds and a jury. A verdict was found for the plaintiffs, for $787.47.

*G. M. Speir,* for the appellants.

*C. P. Kirkland,* for the respondents.

*By the Court,* CLERKE, J. The defendants, to the number of about seventy-five, agreed in writing to form an association or company, for the purpose of establishing a scientific journal, for the dissemination of knowledge. They appointed George V. Hoyle, Calvin R. Averill and Rufus Heaton, as managers for the first year, authorizing them to establish and conduct the paper for the benefit of the stockholders, as they called themselves, when sufficient capital should be subscribed, paid in, or secured. They also, at the same time, directed that a meeting of the stockholders should be called, when the first number should issue, to make such regulations and by-laws as should be necessary for the government of the association. They were not incorporated under any general or special act of the legislature. Two of the managers, when they thought a sufficient amount was subscribed to justify them in commencing the publication of the journal, sent a person to New-York to purchase a printing press and other necessary materials. The purchase was made from the plaintiffs, who are type-founders and dealers in printing materials; for the price of which purchase, amounting to six hundred and eighty dollars and forty-six cents, they sued the defendants in this action.

If the defendants are liable at all, they are liable as partners. If the agreement which they subscribed is an absolute consent to engage jointly in this undertaking, without any further condition or action on their part, their personal accountability is as complete as that of any mercantile firm, composed of only two members. Calling themselves stockholders, and their firm an association, and the number of the members being considerable, cannot make the slightest difference in this respect. In this

Wells *v.* Gates.

state, personal responsibility, to the full extent of the indebtedness to third parties, can only be avoided by the persons constituting any association, when they become a corporation, or a *quasi* corporation. Companies, or societies, which are not sanctioned expressly by the legislature, pursuant to some general or special law, are nothing more than ordinary partnerships; and the laws respecting them are the same. All the defendants signed the articles of association; by which they unequivocally declared that thereby they form an association, stating the specific purpose; they appoint their agents to conduct the business, when *sufficient capital* should be subscribed, paid in, or secured, leaving it clearly to those agents to determine what would be sufficient for the commencement of the undertaking. There was no other way in which this could be determined, but by calling a meeting of the members of the association; and this could not have been contemplated, for in the same sentence by which they appoint the agents, they authorize them to commence the publication, when the capital shall be sufficient, and they provide for no meeting of the stockholders until the first number of the journal shall have been issued, and then merely to make such regulations and by-laws as may be necessary. I can see nothing conditional in this; nothing showing that they only contemplated the formation of a company at a future period. If such was their intention, they certainly adopted a very unfortunate method of expressing it. It is very probable, indeed, that many of the defendants did not, at the time, realize the consequences of their act, and the extent of the responsibility which they incurred. The want of forethought and circumspection, especially on occasions of this kind, is very common; but although the result is to be regretted, the law will not allow it to be escaped.

In England, there are acts of parliament which relate especially to some unincorporated companies, and which, in the formation of them, require certain formalities; but here, where the same necessity for them seems not to exist, the law makes no difference with respect to the manner in which they may be created, between them and private or ordinary copartnerships.

The next question to be considered is, whether the consent of

all the managers was necessary to determine when the publication should be commenced, and the type and other printing materials should be purchased. It is admitted that only two of them acted; but it does not sufficiently appear that the third did not concur; and even granting the applicability to this case of the rule requiring that all the persons to whom a trust is committed must confer and act together, yet I think the very language of the court in the case referred to by the defendants' counsel (*Downing* v. *Rugar*, 21 *Wend.* 178) may be employed here. It cannot be necessary that all should be corporeally present. The duty is strictly ministerial, and the two might have acted with the consent of the third. Ministerial officers may in general depute their powers to one another, or to a third person. Such authority may be presumed; and, if necessary at all, it is proper in this case, that it should be presumed. There was a meeting of the stockholders after the property was purchased, of which notice was given, and after duly organizing, they approved of the purchase. The witness does not say that a majority of the members attended; but the contrary does not appear. There is nothing to controvert the acquiescence of the company in the management of their affairs by Heaton and Averill, until after the discontinuance of the publication, and the failure of the undertaking.

The objection, therefore, to the authority of the agents, either in determining when the enterprise ought to be commenced, or in purchasing the necessary materials to enable them to proceed with it, ought not to prevail.

The judgment should be affirmed with costs.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell*, *Roosevelt* and *Clerke*, Justices.]