## NEW YORK COMMON PLEAS.

JOSIAH A. WALLER Jr. agt. JOHN THOMAS impleaded with
JOSEPH ALLEN, &c. &c.

An action brought against "The City Club," of over seven persons, may be
sustained where the complaint expressly charges that the defendants were
members of and partners in an association or organization known as "The
City Club," that existed on and prior to May, 1869, and up to May 1, 1870 (dur-
ing which time the claim was created by them), either as original debtors or as
assignees of the lease (a balance of rent being claimed) for the two years, which
is alleged to have been made to three of the defendants, by authority of the
defendants and as agents, and for and in behalf of all of them and for their use,
and which they used and enjoyed.

The defendants, by the express allegations of the complaint, and the circumstances
legally presumed therefrom, are to be deemed *assignees* and liable for the rent,
without any reference to the act of 1851, authorizing suits against joint stock
associations.

THIS action was brought against the defendants as mem-
bers of a social association, called the City Club, to recover
the amount due for rent of the premises occupied by the
defendants as such association. The defendant, Thomas,
demurred to the complaint on the ground that it did not
state facts sufficient to constitute a cause of action. The
facts alleged in the complaint are stated in the opinion of the
court.

A. J. REQUIER, *for the demurrer.*
JOHN J. MACKLIN, *in opposition.*

LARREMORE, J.—The complaint alleges, that at the time
of the letting by plaintiff's assignor of the premises in ques-
tion, the defendants were members of, and partners in, an
association known as "The City Club;" that the lease was

made to the three of said members in pursuance of the authority and direction of said club, and for its use; that the members of said club subsequently ratified said lease, and entered into possession of, and occupied said premises, until May 1, 1870; that said defendants had paid various sums on account of rent thereof, leaving a balance of $1,364.63 due thereon; that said lease was duly assigned to the plaintiff, who demands judgment for said amount against the defendants.

The defendant Thomas demurs to said complaint on the ground (*inter alia*) that it does not state facts sufficient to constitute a cause of action.

As appears by said complaint, " The City Club " is composed of more than seven members, and the question presented is, whether said club is an association within the meaning and intention of the "Act in relation to suits by and against joint stock companies and associations," passed April 7, 1849. By the first section of said act, "Any joint stock company or association consisting of seven or more shareholders, or associates, may sue and be sued in the name of the president or treasurer," &c.

The fourth section of said act reserves " the right to a creditor to proceed, in the first instance, against the persons constituting any such joint stock company or association in the manner provided by law."

This act was extended July 9, 1851 (*Sess. Laws 1851, chap.* 455), " to any company or association composed of not less than seven persons, who are owners of, or have an interest in, any property, right of action, or demand, jointly or in common, or who may be liable to any action on account of such ownership or interest."

I think the defendants are clearly within the scope of this amendment. They had an interest in the demised premises, and were liable, on account of such interest, for the rent accruing therefrom.

In the case of *Austin* agt. *Searing* (16 *N. Y.*, 113), this

point was not passed upon by the court, and the construction I have given to the amendatory act of 1851, coincides with the views expressed in *Kingsland* agt. *Braisted* (2 *Lansing*, 19), *Robbins* agt. *Wells* (18 *Abb ·P.* 191), and *Witherhead* agt. *Allen* (3 *Keyes*, 562).

Under the fourth section of the act of April 7, 1849 (and which was not affected by the amendment of 1851), there can be no doubt that plaintiff had a right, in the first instance, to sue the persons constituting the club or association; such right was expressly reserved by the saving clause contained in said section.

By the amendment passed April 11, 1853 (*Sess. Laws,* 1853, *chap.* 153), a new section was substituted in place of section four, by which substituted section suits against joint stock companies or associations, contemplated by the act in question, were, in the first instance, to be prosecuted against the association, and, after such remedy had been exhausted, an action might be maintained against any or all of the shareholders or *associates*, individually.

The amendment of April 11, 1853, omits and thereby repeals the saving clause contained in section 4, as, originally adopted, and the clear intention of the statute as it now stands, is that the shareholders or associates are not individually liable in the first instance for a debt of the association.

The act of July 9, 1851, extended the act of April 7, 1849, to *any company* or association composed of seven or more persons, and the amendment of 1853 is clearly applicable to such latter company or association.

The defendant is entitled to judgment on the demurrer. The plaintiff appealed to the general term from the order sustaining the demurrer.

ALFRED ROE *and* JOHN J. MACKLIN, *for appellant*

I. This action is properly brought against all of the defendants in the first instance.

(1.) The act of 1849 *(Session Laws* 1849, *p.* 489), provided by its first section, that any joint stock company or association consisting of more than seven members may sue and be sued in the name of the president or treasurer, for the time being, and its fourth section provides, that nothing therein contained should deprive a plaintiff " of the right to proceed, in the first instance, against the persons constituting any such joint stock company."

The act of 1851 (*Session Laws, p.* 838,) extends the provisions of this act to associations other than joint stock companies composed of more than seven members.

The act of 1853 (*Session Laws, p.* 283), repeals the proviso in the act of 1849, above quoted, and provide, that suits against joint stock companies should be prosecuted in the first instance in the manner provided in the first section of the act of 1849.

The act of 1849, has been repeatedly held to be applicable to joint stock associations only (*See Kingsland* agt. *Braisted,* 2 *Lansing,* 24.)

It cannot be claimed, that the association formed by the defendants was a joint stock company (*Kingsland* agt. *Braisted,* 2 *Lansing,* 24.)

(2.) Assuming that the defendants are within the act of 1851 ; the act of 1853 does not repeal the proviso in the act of 1849, so far as it is applicable to associations other than joint stock companies.

(*a.*) The usual mode of repealing a statute is to distinguish it by its name and title, and where there are any amendatory acts, by a general reference to all the acts amending the original act.

Where the repealing act does not mention the amendatory act, the latter is still in force (*Chegary* agt. *Jenkins,* 3 *Sand.,* 409 ; *Potter's Dwarris on Statutes, pp.* 156, 157).

" It is a general rule, that subsequent statutes which institute new methods of proceeding, do not repeal former

methods of proceeding ordained by preceeding statutes without negative words" (*Potter's Dwarris on Statutes, p.* 156.)

The act of 1853 is entitled "an act to amend an act relative to suits against joint stock companies, passed April 7, 1849," and its language shows conclusively that it was intended to apply to joint stock associations only.

(3.) The amendatory act of 1853, does not relate back, and take effect from the passage of the original act.

It is only where a section is amended so as to correct verbal errors that the amended section is substituted in the place of the original section, from the time of the passage of the original act (*Town of Duanesburgh* agt. *Jenkins,* 46 *Barb.,* 294; *Ely* agt. *Holton,* 15 *N. Y.,* 595, 598.)

The act of 1840, must be considered as continuing in force from the time of the original enactment, and the new or changed portion to have become law only at and subsequent to the passage of the amendment *Ely* agt. *Holton,* (*supra,*)

Unless a retroactive effect is given to the new provision it is inapplicable to cases arising under an act passed previously.

A statute is never construed retrospectively, unless the intention is manifest, that it was intended to have a retrospective operation (*McManus* agt. *Butler,* 49 *Barb.,* 176.)

II. Even if the act of 1849 were passed as amended in 1853, this action is properly brought. Its provisions are cumulative merely.

(1.) The plaintiff had a remedy at common law against all the defendants in the first instance, and where there are no negative words in the statute altering or modifying the common law remedy, the remedy at common law remains (*Wetmore* agt. *Tracy,* 14 *Wend.,* 250, 255 ; *Candee* agt. *Hayward,* 37 *N. Y.,* 653; *Potter's Dwarris on Statutes, pp.* 74, 156, 219, 275.)

(2.) It provides, that suits against joint stock companies shall be prosecuted in the manner therein mentioned.

The act of 1851 provides, that suits may be brought and

maintained, in the manner provided in the statute as to joint stock companies.   These words are clearly permissive and not imperative.

The ordinary meaning of the word "may" is permissive, and should be presumed to be intended unless it would manifestly defeat the whole object of the statute (*Newburgh T. Co.* agt. *Miller,* 5 *Johns. Ch.,* 101, 113 ; *Williams* agt. *The People,* 24 *N. Y.,* 409.)

It is only construed as " must" or "shall" where the public have an interest in having the act done which is authorized by such permissive words (*Potter's Dwarris on Statutes, p.* 220, *and note; Newburgh T. Co.* agt. *Miller, supra*).

Where these words appear in the same statute, or in statutes relating to the same subject matter, which should be read as though composing one statute, the inference is much stronger that the legislature intended to use these words in different senses—making one permissive and the other imperative.

To hold that this provision is imperative would be to deprive the plaintiff of all remedy.   The association was dissolved prior to the bringing of this suit, and the term of its officers had expired.

Besides, the statute was passed for the benefit of a creditor to facilitate actions against such associations, and the defendant cannot complain if the creditor does not avail himself of the privileges given by the statute (*Corning* agt. *Greene,* 23 *Barb.,* 33 ; *Robbins* agt. *Wells,* 26 *How.,* 24.)

II. It is claimed, that the association formed by defendants is not embraced within the act of 1851 (*Austin* agt. *Searing,* 16 *N. Y.,* 112.)

(1.) The act only applies to associations who are owners of or have an interest in any property, right of action or demand, or who may be liable to any action on account of such ownership or interest.

This provision clearly refers to property or an interest in property owned at the commencement of the suit, in which

the association had an interest which might be levied upon and sold upon execution in a suit against it.

It does not appear on the face of the complaint, that the defendants owned any property jointly, or in common at the time of the bringing of this action.

The lease sued on had expired previously to the commencement of this action, and the ownership or interest of the defendants in it had consequently ceased. Their liability upon it only remained (*See Corning* agt. *Greene,* 23 *Barb.,* 47 ; *Masterson* agt. *Botts,* 4 *Abb.,* 130.)

(2.) The act authorized the suit to be brought against the president or treasurer, for the time being. It does not appear that the association formed by the defendants had, at the time of the commencement of this action, either a president or treasurer. The defendants must show affirmatively, that the association was clearly within the act, and that. they had a president or treasurer. This cannot be presumed. The association like an ordinary copartnership of more than seven persons, may never have had either president or treasurer.

III In all the cases referred to in the opinion of the court below, the defendants were joint stock companies.

In *Kingsland* agt. *Braisted,* (2 *Lansing,* 20,) it appears that the association was an incorporated association.

IV. The demurrer admits all the facts alleged in the complaint.

Whether the plaintiff can show any authority to sign the lease, or that it was executed for the benefit of others or not, the complaint alleges a copartnership, the occupation and possession by defendants of the premises, the payment of the rent by them, and the value of the use and occupation, and these facts appearing are sufficient to maintain this action (*Collyer on Partnership,* §§ 53, 160 ; *Story on Partnership,* § 144 ; *Wells* agt. *Gates,* 18 *Barb.,* 554; *Williams* agt. *Woodward,* 2 *Wend.,* 486 ; *Acker* agt. *Wetherell,* 4 *Hill.,*

112; *McFarland* agt. *Watson,* 3 *Comst.,* 287 ; *Vernam* agt. *Smyth,* 15 *N. Y.,* 328 ; DENIO, J.)

V. The order sustaining the demurrer, should be reversed.

A. J. REQUIER, *for respondent.*

I. The demurrer was properly sustained on the decisive statutory grounds taken.

II. To constitute a cause of action against the members of a social organization, it must appear that the members sued, expressly assented to incurring the obligation (*and cited Fleming* agt. *Hector,* 2 *M. & W.* 172, 188).

(*In the matter of St. James Club,* 2 *De Gex, Macnaughton & Gordon, Ch., R.* 383; *Trower on Law of Debtor and Creditor,* 88 *Law Library, N. S., p.* 256, *and cases cited*).

III. That it did not appear on the face of the complaint that the respondent authorized the creation of the debt.

IV. That it appeared on the face of the complaint that the lease was made and executed in the individual names of three of the members, and that it could not be shown in an action upon it that other persons were liable.

*By the court,* ROBINSON, J.—The demurrer to the complaint cannot, in my opinion, be sustained upon the ground taken by the learned judge at special term.

1*st.* The case made by the complaint does not present the defendants in the action as such a company or association as is contemplated by the act of 1851 (*chap.* 445), which allows any company or association composed of not less than seven persons, who are owners of or have an interest in any property, right of action or demand, jointly or in common, or who may be liable to any action on account of such ownership or interest, to sue or be sued in the name of its president or treasurer.

The complaint expressly charges that the defendants were members of and *partners* in an association or organization

known as "The City Club," that existed on and prior to May 1st, 1869, and up to May 1st, 1870 (during which time the liability in question is claimed to have been created by them), either as original debtors or as assignees of the lease for two years, which is alleged to have been made to Messrs. Platt, Roe and Webb, three of the defendants, by authority of the defendants, and as agents for and in behalf of all of them and for their use. It is also alleged that the defendants affirmed and adopted the lease and entered into possession and used and enjoyed the premises up to May 1st, 1870, and thereby became the assignees of said lease; that the fair and reasonable compensation was that reserved for such use and occupation, that the defendants at various times had paid on account of the rent all except the balance claimed to be due, and in arrears ($1,364.63), as to which plaintiff alleges he is assignee.

It appears from the complaint that the members of this club and alleged partnership consisted of over seven persons, but not that they were the owners of or had any interest in any property, right of action or demand, but it does show or claim they were liable to an action on account of a previous ownership or interest in the lease; it however does not state or show they had ever been organized by any articles of association or agreement making any provision for a "president" or "treasurer," or concentration, or segregating in any member the powers of such officer, or that any attribute or character was conferred on any of the members different from that of co-partners, and seized "*per my et per tout,*" and each possessed of equal right and authority.

Conceding as is claimed on the part of the defendant Thomas that mere social or charitable clubs are not partners (*Parsons on Partnership*, 42, *and cases cited note b*), this is anticipating such a defense, for by the demurrer the allegation that defendants were liable as partners (*Wells* agt. *Gates*, 18 *Barb.*, 554), the non-existence of every fact that might tend to establish a defense against the right asserted is con-

ceded.   2*d*. But were this otherwise the provisions of the
act of 1851 do not preclude the bringing of an action in the
first instance against the members of the company or associa-
tion there referred to.   While by the act of 1853 (*chap.* 153),
amendatory of the act of 1849 (*chap.* 258), it was provided
that suits against joint stock companies and associations
should in the first instance be brought against the president
or treasurer (4 *R. S. Ed., ed.* 650, 1), the provision in the
act of 1851, as to the companies or associations there referred
to, still remained as to such suits permissive: " the suits and
proceedings authorised by this act *may* be brought and main-
tained in the manner therein (*act of* 49) provided."

Rights created by statute must be pursued in the mode
it directs, but any abridgement of common law right and the
ordinary legal remedy for its enforcement can only (if at all)
be effected by positive enactment; if another remedy is
afforded it must be regarded as cumulative, unless expressly
made exclusive (*Wetmore* agt. *Tracy,* 14 *Wend.,* 255, *and
cases cited*).   The election to proceed against the bodies
referred to in the act of 1851 was left optional with the
creditor.

Another question was suggested on the argument as to the
general liability of partners upon a lease executed to three
others of their members, but does not appear to have been
presented to the judge at special term.   Considering the
variety of conflicting decisions in our courts upon the points
suggested, it would not perhaps be the subject of easy solu-
tion (*see Evans* agt. *Wells,* 22 *Wend.,* 324; *Newcomb* agt.
*Clark.* 1 *Denio,* 226; *Fenly* agt. *Stewart,* 5 *Sand. S. C.,*
101; *Williams* agt. *Christie,* 4 *Duer.,* 29; *Babbitt* agt.
*Young,* 51 *Barb.,* 466; *Squire* agt. *Morris,* 1 *Lansing,* 282;
*Dykers* agt. *Townsend,* 24 *N. Y.,* 57; 1 *Am. Lead. Cases*
(*Hare & Wall*), 5*th ed.,* 758); and I do not consider an
investigation necessary, since the complaint already asserts
facts from which defendants may be held as assignees, to wit:
that they entered into possession of the premises on the first

day of May, 1869, and used and enjoyed the same up to the first day of May, 1870, and thereby became the assignees "of said lease," for which term the balance of rent is claimed. And "at various times on and previous to the fifth day of November, 1870, paid to the landlord on account of the rent the whole amount accruing under the lease, except the balance claimed to be in arrear."

From circumstances stated by legal presumption, as well as by express allegation, the defendants are to be deemed assignees and liable for the rent (*Acker* agt. *Wetherell*, 4 *Hill*, 112; *Jay's Land. and Ten.*, § 429; *Bedford* agt. *Terhune*, 30 *N. Y.*, 453). For these reasons the demurrer ought to have been overruled and judgment thereon ordered for the plaintiff. The order sustaining the demurrer should be reversed and judgment ordered for the plaintiff, unless defendant Thomas pay costs of demurrer and appeal, and answer within ten days after service of a copy of the order to be entered herein.

Judges C. P. DALY and J. F. DALY concurred.