# WILLIAM PETTIS *et al.*

### *v.*

# CHARLES H. ATKINS *et al.*

1. JOINT STOCK COMPANY—*partnership.* Where a number of persons enter into articles of association for banking purposes, and, without any charter, assume a name, open a stock book, subscribe for shares of stock, and a portion of them pay small sums on the stock, hold meetings, elect directors, publish the names of such directors, none of whom take any steps to inform the public that they do not belong to the association, enter into business, buy and sell exchange, receive deposits, draw bills, and transact business as a bank: *Held,* that all become members of a partnership and are liable as such, and that they may be sued on a draft drawn by the company which is not paid.

2. Although persons may not be, in fact, partners, still they may so act as to become liable to the public as partners, and be estopped from denying a partnership.

3. Judgment—*should be against all.* In an action against the members of a voluntary association, upon a contract, the recovery must be against all or none

Appeal from the Circuit Court of Cook county ; the Hon. John G. Rogers, Judge, presiding.

Messrs. Fuller & Smith, for the appellants.

Messrs. Hoyne, Horton & Hoyne, and Messrs. Leaming & Thompson, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, brought by appellants in the circuit court of Cook county against appellees.· The defendants were named in the declaration and described as partners doing business under the name of "The Mechanics' Savings Bank Association of Chicago." The declaration contained a special count on a draft for $150, and the usual money counts. Pleas were filed, and a trial was had by the court, without a jury, which was dispensed with by agreement of the parties. The court found for plaintiffs against Boggs and Brine, and in favor of Cady, Dow, Baldwin, Gentry, Hedenberg, Chapin and Atkins. A motion for a new trial, entered by plaintiffs, was overruled, and judgment rendered according to the finding.

It appears that on the 30th day of January, 1862, a number of persons undertook to form an association under the name of "The State Savings Bank," as it was called in two places in the articles of association, but in one the word "State" has lines drawn across it, and the word "Mechanics'" is written above it, apparently in a different hand from the body of the writing. On examination we find the names of Boggs, Gentry, Hedenberg, Evans and McPherson signed to these

articles, with the number of shares of stock each agreed to take, opposite their names, and there were five other persons' names subscribed to it who were not named as defendants in this suit. The book containing these articles has no other entry of proceedings of any kind, and, so far as we can see, nothing was ever done under them.

Subsequently, new articles of association were prepared, and during the months of April and May, 1862, Boggs, Gentry, Hedenberg, Evans, Brine and McPherson, signed these new articles, and placed opposite their names the number of shares for which each subscribed. In addition to their names there were signed those of George J. Brine, Charles H. Atkins and James P. Root, in two places, but these names are erased. Also what appears to have been the name of Baldwin, but erased. But we find his name in what is called the stock book, and he is there credited by $10, paid on two shares of stock. We also find the name of Chapin in that book with a credit of $5, paid upon one share, but his name is not signed to the printed articles which were read in evidence, nor are the names of Dow and Cady ; but they, like Chapin's, appear on the stock book, with credits for payment on shares of stock. On the other hand the names of Root, Brine, Hedenberg and Atkins, although signed to the articles, do not appear on the stock book.

One of the remarkable features of the case is, that men holding themselves out to the world as business men of sufficient attainments for bankers, should leave everything in so loose a condition—should organize and attempt to do business in a great commercial city on such scanty means. Unexplained, it has strong marks of fraud, or such recklessness as is as reprehensible as fraud itself.

The evidence shows that meetings were held by the subscribers for stock, a president and directors elected, business commenced and liberal advertisements made soliciting patronage. And what may appear strange to most persons, a failure did not occur for about thirteen months after the bank was opened. And, as any one might readily suppose, debts were

incurred which could not be paid from the small amount of capital paid in by the shareholders.

Alexander and Wilson testify that all of the defendants, unless it might be Chapin, signed the articles of association, and this does not seem to be controverted. Alexander says that the directors had other copies of the articles of association which had signatures, and we may safely presume that those whose names appear on the stock book, but are not signed to the articles read in evidence, signed other copies, and we must suppose that they all knew the effect of entering into such an organization, and in doing so, intended to assume the liability it imposed. Most of them attended meetings, some of them were elected officers, and the names of the officers were published to the world, and no steps were taken by them to contradict the notices thus given, but permitted the public to suppose they were connected with the organization. Having signed the articles of association, except Chapin, they can not be permitted to escape liability. And Chapin, as Alexander swears, attended the preliminary meetings, and paid on one share of stock and was elected a director, and can not be held to be in better condition than his associates.

This organization not having been formed under any statute, it became a voluntary association, like any other partnership, and must be governed by the law regulating that relation. The law is well and uniformly settled that persons may not, as to themselves, be partners, and yet, as to other persons, incur the same liabilities as if they were, in fact, partners. And by signing the articles in this case, by attending the meetings, being elected and published as officers, each of the defendants, from the proof before us, became, if not as to themselves, as to the world, partners.

Some of them say they either went or sent word to Alexander and directed him to strike their names from the articles, but there is no pretense this was ever done, or that legal or other proceedings were adopted to stop the operations of this organization. Even if they could have withdrawn their names

from the agreement so as to release themselves from liability · without the assent of the others, which is not conceded, still, their names were not withdrawn. The notice to Alexander was not notice to the public that they repudiated all connection with the concern. One or more of them say they only signed the articles to aid Alexander in starting in business. We can not inquire into the motives which prompted their action in the matter, but can only look to what they did. Having loaned their credit, they must respond to the liability they thereby incurred.

The evidence, as it appears in this record, shows that others than those against whom judgment was rendered signed the articles of association, or were elected directors, or whose names were published as such, and judgment should also have been rendered against them. For this error, the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*