MARTIN *et al.*, *Appellants*, v. FEWELL.

1. **Involuntary Non-suit.** A non-suit taken after instructions have been given which preclude recovery by the plaintiff, is not a voluntary non-suit, and will bring up for review the errors committed below. The instructions given in this case were of that character.

2. **Abortive Corporation**: LIABILITY OF MEMBERS. If an association intended to be incorporated omit to take a step necessary to perfect its organization as a corporation, the members will be liable for its debts as co-partners.

3. **Partnership**: CORPORATION: ESTOPPEL. Where partners have dealt as such with a seller, and after becoming incorporated continue to deal as before, having their bills made in the same way, without giving any notice of their altered condition, they will continue to be liable as partners, unless the seller have knowledge thereof derived from some other source.

| 79 | 401 |
| 104 | 547 |
| 79 | 401 |
| 107 | 625 |
| 47a | 34 |
| 79 | 401 |
| 49a | 356 |
| 53a | 248 |
| 79 | 401 |
| 58a | 425 |
| 59a | 134 |
| 79 | 401 |
| 127 | 364 |
| 79 | 401 |
| 73a | 392 |
| 79 | 401 |
| 78a | 609 |
| 79 | 401 |
| 99a | [2]609 |

*Appeal from Henry Circuit Court.*—HON. F. P. WRIGHT, Judge.

REVERSED.

*James P. Maginn* for appellants.

*Gantt, Fyke & Philips* for respondents.

HOUGH, C. J.—This is an action of assumpsit, by plaintiffs as partners, against defendants as partners. There are three counts in the petition. The first is to recover judgment for goods alleged to have been sold by plaintiffs to defendants, March 30th, 1877, amounting to $553.89; the second count is for goods sold August 14th, 1877, amounting to $72.09; and the third is for goods sold October 9th, 1877, amounting to $422.40. In addition to the usual averments as to the sale and delivery of the goods, each count contains substantially the following allegations: That at the time of said sales the defendants were partners in the retail mercantile business in Calhoun, Henry county; that one M. Woods was the general agent of defendants, and was by them authorized to conduct, manage and superin-

26—79

tend said business, to buy and sell goods and merchandise, and to do all things in and about said business as fully as if he were himself sole owner thereof, and to do all things usual and customary to be done by merchants carrying on that sort of business; that M. Woods, as such agent, and with the knowledge and approbation of these defendants, carried on said business under the name " M. Woods," and the defendants had no other partnership designation; that prior to December, 1876, plaintiffs had had dealings with said defendants, and had sold and delivered to them goods and merchandise, through Woods as defendants' agent; that plaintiffs had at no time business transactions with Woods, in any other capacity than as agent for defendants.

The answer contains a general denial, and also alleges that the goods in the petition mentioned were sold and delivered by plaintiffs to the " Calhoun Grange Store Company," a duly organized corporation of Missouri, and not to defendants; that the certificate of incorporation was duly filed in the recorder's office of Henry county, on the — day of ——, 1876, and on May 8th, 1877, a similar certificate was filed with the Secretary of State, and on the same day the said secretary executed to said Calhoun Grange Store Company a certificate of incorporation as provided by law. The replication is a general denial of the new matter pleaded in the answer.

It appears from the testimony that the defendants, together with M. Woods, and others not sued, engaged in merchandising at Calhoun, Henry county, sometime in 1875; that they appointed a committee to organize a store, and subscribe money for shares; that M. Woods had $20 stock in the concern from the beginning; that it was to be incorporated and managed by a board of directors; that M. Woods was one of the first board of directors, and bought the stock and managed the store; that the understanding and intention of all the parties interested was, that they were to have been incorporated from the beginning, and that they paid in their money with that understanding; that

in 1875, before they commenced business, a committee was appointed from their number to attend to their incorporation; but that it never reported; that they knew that M. Woods was buying and selling in their behalf so far as they were interested; that from time to time they were at the store and talked with Woods about the business; that they talked with each other from time to time about the business after it was commenced; that in 1876 the goods were invoiced by M. Woods and the directors, who announced a profit over the expenses, etc., and that the store was out of debt; that they could have had access to the books if they had so desired; that in June, 1877, the directors had a meeting at the store and invoiced the goods and called on M. Woods to show the condition of the business; that the books were examined; that they were in debt some; that they asked Woods how it came so, and he said he had to have more goods and had bought them on credit; that the directors took no action as to notifying creditors; that the store continued in operation and Woods continued in charge until the fire; that the results of the examinations made by the directors were communicated to the other stockholders.

The depositions of plaintiffs, Edward and John Martin, were read by plaintiffs, proving their partnership, the sale and delivery of goods to M. Woods, by their firm, for the store at Calhoun, in November, 1876; the payment therefor, partly on March 29th and the balance on June 7th, 1877, the sale and delivery to Woods of the respective bills of goods mentioned in the three counts of the petition; their non-payment; the keeping of the account on their books in the name of "M. Woods," Calhoun, Missouri; that plaintiffs had never received any notification in any way, that Woods was agent for and buying goods for a corporation during the time of their mutual dealings. John Martin deposed that he sold goods to M. Woods in November, 1876, for the first time in behalf of his firm, taking his order at Calhoun; that on that occasion Woods told him

that he was personally worth nothing, but was representing a grange store, buying goods for it; that a lot of farmers had put him there to attend to the buying for them, and that the concern was worth from $75,000 to $100,000, and was good, beyond any question; that this first sale was on four months' credit; that he had not at any time sold goods to Woods on his individual credit; that he sold to Woods twice afterward, in August, 1877, and October, 1877, the August sale at Calhoun and the October sale at St. Louis, all on the credit of four months; that nothing was said to him by Woods or by anybody else with respect to any change in the character of the concern at Calhoun, for which Woods was agent, at any time during the dealings testified to.

The defendants offered in evidence a certified copy of articles of association under the statute, authorizing the formation of corporations for manufacturing and business purposes, as recorded in the recorder's office of Henry county, by which it appears that certain of the defendants, associate themselves as a corporation to carry on a retail store at Calhoun, the name of the corporation being the Calhoun Grange Store Company; the capital stock $2,000, divided into 100 shares, of $20 each, the corporation to continue until January 1st, 1882. These articles were acknowledged by the signers thereof, September 9th, 1876, and were filed for record December 18th, 1876. Defendants offered the certificate of the Secretary of State of Missouri, of date May 8th, 1877, reciting the filing, by certain of the defendants, in his office, of a declaration in writing as provided in section 4, article 1, chapter 37, Wagner's Statutes, etc., and certifying that said parties have become a body corporate under the corporate name of "Calhoun Grange Store Company," etc.

Defendants introduced M. Woods, who testified that he had informed one of the plaintiffs, John Martin, in the spring of 1877, that the store had been incorporated, and that he had offered to show him the articles of incorpora-

tion, and that Martin said it would make no difference. Max McCann also testified for defendants, fixing the date of the alleged interview between Woods and Martin as after the return of Woods from his March visit to St. Louis in 1877.

At the instance of the plaintiffs, the court gave the following instructions:

2. If the jury believe from the evidence that the plaintiffs were, prior to November, 1876, co-partners under the firm name of Edward Martin & Co., and so continued up to the time of bringing this suit, and that the defendants or some of them were, prior to said date, co-partners in the business of selling merchandise at Calhoun, Missouri, through their duly authorized general agent, M. Woods, and that Woods, as such agent, purchased and received the goods and merchandise sued for by the plaintiffs in the first count, and agreed to pay the prices therefor in the itemized account annexed to the same, and four months from March 30th, 1877, and that said goods have not been paid for, then the plaintiffs are entitled to a verdict for the amount of said account with six per cent interest thereon from the 30th day of July, 1877, to this date against the defendants who at the date of such purchase were co-partners in said business, unless the jury believe that such partnership had been dissolved prior to the date of said purchase.

7. With respect to the second and third counts of the petition, if the jury believe from the evidence that the plaintiffs Edward Martin and John Martin were co-partners prior to November, 1876, and so continued up to the time of bringing this suit, and that the defendants, or some of them were, prior to said date, co-partners in the business of merchandising, through their duly authorized general manager Woods, and that Woods, as such agent, purchased and received the goods and merchandise sued for in the second and third counts of the petition, and agreed to pay the prices there mentioned in the itemized account thereof annexed to the respective counts of the petition, and fou-

months from the respective dates of said accounts, and if the jury believe that these goods have not been paid for, they will find a verdict on such counts for the amount thereof and six per cent interest thereon from the expiration of four months from the respective dates of each of said accounts against the defendants who at the date of said purchase were co-partners in said business, unless the jury believe that prior to the date of said purchase the partnership of defendants was dissolved.

At the request of the defendants, the court gave the following instructions:

1. If the jury believe from the evidence that prior to the sale of any goods by the plaintiffs to Woods for the grange store in question, the defendants had, for the purpose of organizing a business corporation for running and conducting what is commonly known as a grange store, agreed to subscribe and pay shares of stock to such organization, and did take such stock with such understanding and for such purpose, and took initiative measures for the incorporation of said business, and organized as if incorporated, and elected directors for the management and control of said association, and designated said Woods to conduct and superintend said store for such directors, and did make and acknowledge the articles of association read in evidence, and at the time of the first sale of any goods by plaintiffs to said Woods, said defendants, through directors, were acting under the said articles of association as a corporation and not otherwise, and the said Woods had no authority from them to buy goods except as the agent of said association, then, although said articles of incorporation may not have been filed and recorded as by statute provided, the defendants are not liable as partners to the plaintiffs for any goods bought of them by said Woods.

2. Even though the articles of association read in evidence were not filed with the Secretary of State, yet, if defendants were acting alone under such articles of association, claiming to be a corporation such omission to file the same

Martin v. Fewell

with the Secretary of State did not, of itself, make the defendants liable as partners for any goods bought for the store after said articles were actually drawn up, signed and acknowledged.

3. Before the plaintiffs can recover in this action it devolves upon them to prove that, at the time of the sales of the goods in question, either defendants were in fact co-partners, and as such purchased the goods, for such co-partnership as such and not for defendants as an association, and it was so understood by plaintiffs in making the sale, or that defendants as a voluntary association had held said Woods out to the community as their agent for conducting and managing the store in question, and that the plaintiffs, in the belief and upon the faith of such conduct, and that said Woods was the authorized agent of defendants, sold him the said goods as the agent of defendants; and unless they have so proven to the satisfaction of the jury, the jury will find for defendants.

4. If the jury believe from the evidence that at th time of the sales of the goods sued for defendants were not, in fact, co-partners, and that plaintiffs sold said goods to Woods upon his own individual credit, and not as the agent of defendants, then the plaintiffs cannot recover in this action.

5. No act or declaration of Woods can bind these defendants unless the same was authorized by defendants, or the defendants by their conduct or declarations had held Woods out to the public as their agent for the purpose, as claimed in the petition, and the plaintiffs in dealing with him acted upon the faith of such conduct and declarations on the part of defendants, unless there was a co-partnership, and Woods was one of the co-partners, and made the purchases as such.

6. The articles of association read in evidence by defendants, after the same were recorded in the office of the recorder of this county, and the issue of the certificate read in evidence from the office of the Secretary of State con-

stituted said association a corporation by the name of the " Calhoun Grange Store Company," and if defendants were stockholders therein, plaintiffs cannot recover in this action for any goods thereafter sold to Woods as the agent of said corporation; provided, from all the facts and circumstances the plaintiffs had reason to believe they had organized as an association, and not as co-partners, or had notice of said certificate.

8. If the jury believe from the evidence that defendants, at the time of the sales in question, were not in fact co-partners, then, although the jury may find from the evidence that prior thereto they had held themselves out to the community as joint owners of the store in question, yet unless the jury further believe from the evidence that plaintiffs, at the time of said sales, made the same to Woods in the belief and in the reliance upon the fact that defendants were mere partners in said store, then plaintiffs cannot rely and recover upon such conduct of defendants.

The court, of its own motion, gave the following instruction to the jury:

If you believe from the evidence that the defendants or some of them in the fall of 1875, or in the spring of 1876, made an agreement with each other to contribute money or capital for the purpose of carrying on the business of buying and selling merchandise for their mutual profit, and that they did so contribute and carry on said business, either personally or by their agent, then such of defendants as did these things became and were partners in such business, and each partner was individually liable for all the partnership debts, provided it does not further appear from the evidence that they did not intend to act and carry on business as partners, but that they intended to do business as an incorporated company and each one to be liable only for the amount of his stock.

Upon the giving of these instructions the plaintiffs took a non-suit, and on the refusal of the court to set the same aside. they appealed to this court.

Martin v. Fewell.

It is contended by the defendants that the instructions of the court were not such as to preclude a recovery by the plaintiffs, and that the non-suit taken by them was, therefore, voluntary and cannot be disturbed; that although the instructions given by the court declaratory of the effect of the articles of association signed by the defendants and of their intent and attempt to become a corporation may have been erroneous, still under the second and seventh instructions given by the court for the plaintiffs, they might have obtained a verdict from the jury. It is unnecessary to determine in this case whether this court will review the action of the trial court on a judgment of non-suit where the instructions given are contradictory. We do not conceive that such a case is presented by the instructions before us. The second and seventh instructions authorize a recovery by the plaintiffs, if they find that at the dates of the said several sales the defendants were co-partners. But the first, second and third instructions given by the court at the instance of the defendants, and the instruction given by the court of its own motion, neutralize the second and seventh instructions and prevent a recovery thereunder, by declaring, upon the uncontradicted facts in evidence, that the defendants were not co-partners. Nor can it be said that under the disjunctive clause which concludes the third instruction given for the defendants, the plaintiffs could have recovered. The testimony will not warrant a finding that the defendants, as a voluntary association, held Woods out as their agent, that is, as the agent of a voluntary association; for the testimony of the defendants is explicit that they intended to act as a corporation and regarded themselves as so acting, and the testimony of the plaintiffs discloses no knowledge on their part of any articles of association whatever. We are of opinion, therefore, that the plaintiffs properly suffered a non-suit.

The only question remaining to be determined is, whether, on the facts stated in the first and second instruc-

*1. INVOLUNTARY NON-SUIT.* (margin heading)

tions given at the instance of the defendants, and in the instruction given by the court of its own motion, the defendants are liable as co-partners. Neither the case of *Hurt v. Salisbury*, 55 Mo. 311, nor that of *Richardson v. Pitts*, 71 Mo. 128, relied upon by the counsel for the plaintiffs, furnishes a distinct answer to this inquiry. The first case was a suit upon a note executed by certain individuals as directors assuming to represent a corporation which had no legal existence, and this court held that the parties who signed the note were liable thereon. In the case last named, certain members of an inchoate corporation, whose incorporation was incomplete by reason of a failure to file the articles of association with the Secretary of State, advanced money for the benefit of the joint enterprise, under obligations incurred by them upon the supposition that the association was duly incorporated, and they were adjudged to be entitled to contribution from their associate members beyond the amount of stock severally subscribed for by such associates. The effect of this decision is to create the relation and liability of partners as between the members of an unincorporated association, so far the debts of the association contracted in good faith and paid by any of its members, are concerned, and to establish a different rule from that laid down in *Ward v. Brigham*, 127 Mass. 24. The decision of this court is supported by the cases of *Hill v. Beach*, 12 N. J. Eq. 31; *Hodgson v. Baldwin*, 65 Ill. 532; *Flagg v. Stowe*, 85 Ill. 164. Vide also *Ferris v. Thaw*, 72 Mo. 446.

In *Pettis v. Atkins*, 60 Ill. 454; *Bigelow v. Gregory*, 73 Ill. 197; *Abbott v. Smelting Co.*, 4 Neb. 416; *Frost v. Walker*, 60 Me. 468; *Wells v. Cates*, 18 Barb. 554; *National Union Bank v. Landon*, 45 N. Y. 410, and *Tappan v. Bailey*, 4 Met. 529, it is held that members of an unincorporated association, notwithstanding their subscription and payment for a specified number of shares of the capital stock of the association are liable as co-partners for the debts of the association. These decisions we regard as applicable to the

case at bar. By reference to the testimony it will be seen that in 1875, more than a year before the articles of association were signed by the defendants, the store was established and shares of stock were subscribed for and Woods was appointed to make the purchases and superintend the sales. All this was done, it is true, with the understanding that the promoters of the enterprise were to become a corporation, and the purpose of the promoters undoubtedly was to limit their liability to the amounts severally subscribed by them.

If by reason of an unexecuted intention to become a corporation, the defendants could carry on the business of merchandising from 1875 until May, 1877, without incurring in the meantime the liability of partners, we do not see why they could not have continued so to act as a corporation for a much longer period, buying and selling through an agent, and enjoying all the privileges of a corporation without being liable to be sued as such. No mere intention on the part of the members of an unincorporated association, to be a corporation, will suffice to restrict their individual liability to that imposed by the statute upon corporate shareholders. Not being a corporation, their liability cannot be a corporate liability, but must be that of a joint stock company, unless the provisions of the statute in relation to limited partnerships shall have been complied with, of which there is not even the slightest intimation in this case. There is no question but that the goods were purchased by Woods of the plaintiffs for the defendants, and went into the store of defendants, and were sold by Woods for their benefit, and a ruling which would turn the plaintiffs out of court, and compel them to collect the whole amount of their claims from Woods, or the directors in charge, who could in turn go against the defendants for contribution under the decision of this court in *Richardson v. Pitts, supra,* would be not only manifestly unjust, but utterly indefensible. Under the logic of the case last cited, the defendants are liable as partners directly to the plaint-

iffs for the debts of the association incurred before they became incorporated.

For the debts incurred after they became a corporation, their liability will depend upon the fact of actual notice of 3. PARTNERSHIP: their incorporation to the plaintiffs at the corporation: estoppel. time such debts were incurred. When partners have dealt as such with a seller, and after becoming incorporated, continue to deal as before, having their bills made in the same way, without giving any notice of their altered condition, they will continue to be liable as partners, unless the seller have knowledge thereof derived from some other source. Whether the plaintiffs had such notice or knowledge, is a question of fact for the jury.

For the reasons given, the judgment will be reversed and the cause remanded. All the judges concur.