H. H. HUNNEWELL *et al.*, Trustees of the South Missouri Land Company, Appellants, v. THE WILLOW SPRINGS CANNING COMPANY *et al.*, Respondents.

### St. Louis Court of Appeals, March 7, 1893.

1. **Joint-Stock Companies:** LIABILITY OF MEMBERS. The shareholders of a joint-stock company are liable as partners· for the debts of the company.

2. ———: ———: ESTABLISHING MEMBERSHIP. If it appears that the company organized has actually engaged, under circumstances not prohibited by its articles of association, in the business for which it was formed, each subscriber who has subscribed with the intent to participate in the profits of the company, and each contributor to the funds of the company who has made his contribution with that intent, is chargeable as a partner; and an unexplained subscription or contribution is evidence of such intent.

3. ———: ———: ———. Acting as a member of the board of managers or trustees of the company, or participating in the meetings of the company, will also render the person doing this chargeable as a partner without proof of his ownership of shares.

4. ———: ———: ———. But *held*, by BIGGS, J., that the mere signing of a subscription list for the formation of a joint-stock company is not sufficient in itself to establish a liability as partner on the part of the subscriber, since the subscription is only an executory agreement to take stock in a proposed company, but that something further is essential, such as the signing of articles of association, attending the meetings for the organization of the company, paying assessments, or serving as trustee or director.

*Appeal from the Howell Circuit Court.*—HON. W. N. EVANS, Judge.

REVERSED AND REMANDED.

*Wallace Pratt, Olden & Orr,* for appellants.

(1) The liability of defendants in this case should be measured by the law governing joint-stock companies, or voluntary associations formed for trade and profit, which are treated as and have the common attributes of common partnerships. 1 Bates on Partnership, sec. 72; *Smith v. Warder,* 86 Mo. 382; *Perring v. Hone,* 4 Bing. 28; *Clagett v. Kilbourne,* 1 Black. 346; *Montgomery v. Elliott,* 6 Ala. 701; *Smith v. Fagan,* 17 Cal. 178; *Pettis v. Atkins,* 60 Ill. 454; *Pipe v. Bateman,* 1 Iowa, 369; *Frost v. Walker,* 60 Me. 468; *Alvord v. Smith,* 5 Pick. 232; *Tyrrell v. Washburn,* 6 Allen, 466; *Taft v. Ward,* 106 Mass. 518; *Atkins v. Hunt,* 14 N. H. 205; *Rianhard v. Hovey,* 13 Ohio, 300; *Shambury v. Abbott,* 112 Pa. St. 6; *Cutter v. Thomas,* 25 Vt. 73; *Hardy v. Mfg. Co.,* 80 Va. 404; *Werner v. Lisen,* 31 Wis. 169; *Richardson v. Pitts,* 71 Mo. 130; *Bigelow v. Gregory,* 73 Ill. 197; *Abbott v. Smelting Co.,* 4 Neb. 416; *Frost v. Walker,* 60 Me. 468; *Wells v. Cate,* 18 Barb. 554. These cases announce the doctrine "that members of an unincorporated association, notwithstanding their subscription and payment for a specific number of shares of the capital stock of the association, are liable as co-partners for the debts of the association." And this doctrine is approved in *Martin v. Ferrell,* 79 Mo. 410; *Hill v. Beach,* 12 N. J. Eq. 31; *Hodgson v. Baldwin,* 65 Ill. 532; *Floy v. Stone,* 85 Ill. 164; *Snyder v. Burnham,* 77 Mo. 52. (2) Instruction number 2, given on part of defendant, is not the law even applied to associations and clubs

formed for social or political purposes, much less does it announce the true rule by which to measure the liabilities of members of any association formed for trade and profit. Instruction number 2 is erroneous for the further reason that it declares, as a matter of law, that no partnership relation exists between members of a voluntary association. Bates on Partnership, sec. 72, and cases cited. (3) None of the defendants against whom plaintiffs sought judgment denied, but on the contrary all who testified admitted, that they subscribed to the stock of the company. This alone constitutes them members of the company. *Frost v. Walker*, 60 Me. 468; *Railroad v. Pearson*, 128 Mass. 445.

*Livingston & Green*, for respondents.

Rombauer, P. J.—The plaintiffs seek to recover a judgment against the defendants upon the following state of facts: That, in the spring of 1889, they sold to the Willow Springs Canning Company a bill of lumber, which was used by the canning company in the construction of a building which was necessary to, and was afterwards used in connection with, its business; that a portion of the purchase money for the lumber remained due and unpaid; that the canning company was organized as a joint-stock company for the purpose of canning and selling fruit and vegetables; that the defendants were stockholders in the company, and were liable as partners for the debts of the concern. The cause was submitted to a jury, and the finding and judgment were for the defendants. On this appeal the only complaints made relate to the action of the court in giving and refusing instructions.

Before we examine the particular assignments of error, it would be better to refer briefly to the law

of joint-stock companies as applicable to the particular question presented by this record, so that what we may say concerning the instructions will be the more readily understood.

The universal law, both in this country and England, is that the shareholders of a trading company are liable as partners for the debts of their company. *Martin v. Fewell*, 79 Mo. 401; *Frost v. Walker*, 60 Me. 468; *Hedge & Horn's Appeal*, 63 Pa. St. 273; *Taft v. Warde*, 111 Mass. 518; *Bodwell v. Eastman*, 106 Mass. 525; *Pettis v. Atkins*, 60 Ill. 454; *Abbott v. Smelting Co.*, 4 Neb. 416; *Wells v. Gates*, 18 Barb. 554; 1 Beach on Private Corporations, sec. 167; Parsons on Partnership, 451; Bates on Partnership, sec. 72. The only distinctions between a trading company and an ordinary co-partnership are that the capital of a joint-stock company, organized for trading purposes, is usually divided into shares, and a transfer of a portion of the shares without the consent of the other stockholders, or the death of a shareholder, does not work a dissolution as it would in an ordinary co-partnership, unless it is so stipulated in the articles of agreement. As to what facts are sufficient to show membership in such a company, so as to create a partnership liability, the authorities are not in accord. It has been held that, if the party sought to be charged signed the subscription paper, and paid assessments on the shares, it is sufficient. *Perring v. Hone*, 4 Bing. 28; *Frost v. Walker*, *supra*. But this is denied by the supreme court of Pennsylvania in *Hedge & Horn's Appeal*, 63 Pa. St. 273, where the court held that, in addition to the subscription and the payment of assessments, the party must have acted as a member or director by attending meetings, etc. The decision of the court in the case last cited rests chiefly on the principle, that the co-partnership relation results from

voluntary contract, and not from a community of property interests. Therefore, the court argued that a subscription and the payment of the first deposit, without more, did not constitute a partnership; that this left the contract executory, and that it could only become executed by acts of participation. It was said by Judge AGNEW, who delivered the opinion of the court: "Now, what is a subscription to shares for the purpose of forming a joint association, to prosecute any work or matter of business? When the first subscriber signs his name he is unquestionably not a partner, for there is no other on the paper; when the second subscribes, the partnership is not formed, for it is expected that others will subscribe. When the whole number of shares contemplated have been subscribed, the relation of partnership still is not formed, for until the subscribers enter upon their project nothing is done to effectuate their common purpose. The subscription is but an act or declaration of the intention of the subscriber to become a partner, and is executory only. The thing itself yet remains to be done."

The supreme court of Maine in the case of *Frost v. Walker, supra,* took a somewhat different view. It there appeared that the defendants had subscribed for stock in the New England Express Company, an unincorporated joint-stock company, and had paid assessments on the shares. It also appeared that the company had entered actively on the business for which it was organized. The court, after referring to the authorities which hold that a mere subscription is sufficient, said: "But it is not necessary in this case to decide whether an unconditional subscription for shares will alone make the subscriber liable as a partner, for these defendants not only subscribed for shares, but actually paid one or more assessments upon them; and

we cannot doubt that, by thus contributing to the actual working capital of the company, they became entitled to share in its profits, if any should be made, and as a legal consequence became partners in the concern, and liable as such to its creditors.''

We are of the opinion that the doctrine of the Maine court ought to be adopted under certain conditions. If it appears that the company organized actually engaged in the proposed business, under circumstances not prohibited by the articles of association, each subscriber or contributor to the funds of the company, who becomes such with intent to participate in the profits, becomes chargeable as a partner. An unexplained contribution or subscription is evidence of such intent. In case of a subscriber, actual payment of his subscription, in whole or in part, is not essential to make him chargeable as a partner, unless the right to participate in the profits is made dependent by the articles upon the antecedent payment of his subscription in whole or in part. This result is unavoidable, if we apply to these organizations the law of partnerships and corporations, as far as the same is properly applicable to them. And we also think that proof that a party was a member of the board of managers or trustees, or that he participated in the meetings of the company, is sufficient without proving ownership of shares. *Taft v. Ward*, 111 Mass. 518.

The defendants' second instruction reads: "The court instructs the jury that, the liabilities of members of voluntary associations not being derived from any partnership relations, no liability would attach for the payment of this debt from the mere fact of membership; and, before any of these defendants can be bound or held for the payment of this debt, it must be shown by the plaintiffs that such defendants authorized the

making of the debt, or afterwards ratified the making of, or agreed to pay, the same."

It will be readily perceived, from what we have said, that this instruction is wrong; for the liability of a member of a trading association for the debts of such a concern *does result from a partnership relation.* This instruction is only applicable to membership in social, political, educational or charitable organizations, where the liability of a member for debts rests solely on the ground of principal and agent. This principle was applied by this court in *Richmond v. Judy,* 6 Mo. App. 465, in which the court held that, where a committee to conduct a political campaign is sued for advertising bills, the members are liable only for the acts which they have authorized or ratified. So, in Pennsylvania *(Ash v. Guie,* 97 Pa. St. 493), the court decided that, where a committee of a Masonic lodge is appointed to borrow money to construct a building, only those of the committee were individually bound for the money so borrowed, who authorized or ratified the act. This instruction proceeds upon an erroneous conception of the law, and was necessarily prejudicial.

The defendants' fifth instruction which the court gave is drawn upon the same theory, and that is that they could only be held for the price of the lumber, which they admitted had been purchased by A. D. Pease, who was a shareholder, and who had also been selected as general superintendent, by showing that they either authorized the purchase or afterwards ratified it. As we have already shown, this instruction would have been correct, if the defendants had been stockholders of a social club, or some association not organized for profit. But not so in this case. If the act of Pease was within the scope of the partnership business, the defendants are bound. The instruction ought to have been refused.

The jury were told in the third instruction, given at the request of the defendants, that the mere act of signing the subscription paper, without more, was not sufficient to create membership, which, we think, properly declared the law, when taken in connection with the plaintiffs' second instruction, which reads: "The court instructs the jury that all of the defendants, who subscribed for shares in the Willow Springs Canning Company with the intention of becoming members thereof and for sharing in the profits of the business of the company, are, in law, as to third parties dealing with said company, members thereof."

Some of the other instructions asked by the plaintiffs are faulty, but the objections are apparent, and will doubtless be remedied on another trial.

The evidence, as presented by this record, is insufficient to bind some of these defendants. The bill of exceptions shows that the subscription list and the record of the meetings of the company were read in evidence. The stenographer states in his transcript that this documentary evidence could not be found, and for this reason he was unable to make a complete transcript.

We will therefore reverse the judgment, and remand the cause for further proceedings against all the defendants. Judge Bond concurs. Judge Biggs concurs in the result.

Biggs, J. *(concurring)*.—It is held in the opinion that the signing of a subscription list, without explanation, is sufficient to make the signer a member of a proposed joint-stock company. This ruling is against all of the decisions; at least I have been unable to find any case supporting it. All of the cases hold that an agreement merely to take stock in a proposed joint-stock company is executory, and is not sufficient within

itself to constitute a contract of membership. Something else must be done indicating an intention to become a member, such as signing articles of association, attending meetings for the organization of the company, paying assessments, or serving as trustee or director. Membership in such a company, like membership in an ordinary partnership, can only result from an express agreement. It cannot result from the signing of a subscription paper, because that would only be the expression of an *intention* to become a member.

In the case of *Taft v. Warde*, 111 Mass. 518, it appeared that the articles of association provided that no one but a stockholder should be a trustee. It was also in evidence that the defendant was elected a trustee, attended meetings, took part in the deliberations of the trustees, told parties that he had subscribed for stock for his firm, and had paid assessments thereon. It was held by the court that the evidence was sufficient to justify a reasonable inference that the defendant had subscribed for stock, and was entitled to share in the profits of the business.

In the case of *Frost v. Walker*, 60 Me. 468, it was in evidence that the defendants signed a subscription paper, and that they afterwards paid assessments on the precise number of shares set against their names. The court ruled that, the defendants, by thus contributing to the working capital of the company, were entitled to share in the profits of the business, and that this, by operation of law, made them partners.

The English court of common pleas, in the case of *Perring v. Hone*, 4 Bing. 28, decided that the defendant, who had only subscribed for shares but had not signed the deed or articles of association, was a member of the joint-stock company, upon the ground that he had assented to the deed by attempting to sell his interest.

The supreme court of Massachusetts, in the case of *Bodwell v. Eastman*, 106 Mass. 525, decided that the signing of the articles of association created the co-partnership relation.

In the case of *Pettis v. Atkins*, 60 Ill. 454, all of the defendants, except one Chapin, signed the articles of association. Most of them attended meetings, some of them were elected officers, and the names of the officers were published. Chapin attended the primary meetings, paid assessments on stock, and was elected a director. Under this condition of the proof, the defendants were held to be members of the company, and liable as partners for its debts.

In *Wells v. Gates*, 18 Barb. 554, all of the parties sought to be charged signed articles of association for the purpose of establishing a newspaper. Held, that the signing of the articles constituted the signers partners.

In the case of *Strasburg v. Echternacht*, 21 Pa. St. 220, the defendant signed a subscription paper agreeing to subscribe for a certain number of shares of the capital stock of a railroad company, to be thereafter formed. Held, that the paper signed was not a contract, but a mere expression of the subscriber's intention.

The same court, in the case of *Rice v. Shuman*, 43 Pa. St. 37, held that, when A permits B to buy stock on their joint account in anticipation of forming a partnership, and A immediately afterwards repudiated the agreement to become a partner, the latter was not entitled to any of the profits of the venture.

In *Dennis v. Kennedy*, 19 Barb. 517, it was held that the signing of articles of association was sufficient to constitute the signer a member of a joint-stock company.

The supreme court of New York, in *Townsend v. Goewey*, 19 Wend. 424, decided that, where a joint-

stock company is formed, and the articles of association contain an agreement by the signers to pay the amount of their several subscriptions on calls to be made by the trustees, such trustees may maintain an action at law to enforce such promise.

In *Phipps v. Jones*, 20 Pa. St. 260, the court decided that a subscription for the benefit of a proposed association for the building of a church was a mere proposal, and was revocable until the association was formed.

In the case of *Edinboro' Academy v. Robinson*, 37 Pa. St. 210, the subscription paper provided for an organization for certain purposes, whenever a certain amount was subscribed. The court held that the subscription paper was in effect articles of association, and that, so soon as the requisite amount was subscribed, the subscribers, without further action, became an association of persons.

The supreme court of Pennsylvania, in *Hedges & Horn's Appeal*, 63 Pa. St. 273, which is cited in the opinion, adopts the same line of argument, and decides that, until the subscribers meet and enter upon their project, the relation of partnership does not exist.

I do not consider the question under discussion of much importance in this state, in view of the great facility afforded by our statute for forming corporations, which has practically done away with joint-stock companies. But the conclusion of my associates is so much opposed to the precedents, as I read and understand them, that I deem it proper to give my views in a separate opinion.